UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION

This document applies to:

*In re Lehman Brothers Equity/Debt Securities
Litigation*, 08 Civ. 5523 (LAK)
------------------------------------- x

09 MD 2017 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/12

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

  Lead Plaintiffs represent a class of pension funds, companies, and individual investors who purchased securities of Lehman Brothers Holding Inc. ("Lehman") pursuant to certain offering materials that, they allege, contained misleading statements and omissions. They sue former directors and officers of Lehman,[1] as well as certain underwriters and auditors of Lehman securities, under the Securities Act of 1933 and the Exchange Act of 1934. The matter now is before the Court on Lead Plaintiffs' motion to approve a class settlement with the former directors and officers for $90 million (the "D&O Settlement").

*Background*

  Lead Plaintiffs state that they potentially could recover a judgment of "many billions

---

[1] The former directors and officers of Lehman named as defendants in this action are Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, and Ian Lowitt (the "officer defendants"), as well as Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (the "director defendants"). They are collectively referred to as the "former directors and officers."

2

of dollars"[2] from the former directors and officers at trial. They nevertheless propose to settle their claims against them for $90 million to be paid by certain of Lehman's insurance policies without any contribution by any of the former directors and officers. The former directors and officers nonetheless would be released from all claims that were or might have been asserted against them in this action.

The Court expressed concern about these aspects of the D&O Settlement at the April 12, 2012 settlement hearing and requested information concerning: (1) Lead Counsel's ability accurately to assess the settlement offer without substantial knowledge of the former directors and officers' personal assets,[3] and (2) the adequacy and reasonableness of the settlement in light of the former directors' and officers' allegedly enormous possible exposure and their personal assets, both liquid and non-liquid.[4]

---

[2] DI 804, at 20.

Unless otherwise noted, citations to docket entries reference the docket in *In re Lehman Brothers Securities and ERISA Litigation*, No. 09 MD 2017 (LAK).

[3] *See, e.g.,* DI 889, ¶¶ 8-13 (indicating that Lead Counsel hired investigators to find publically available information on the former directors and officers' finances, but was not permitted to review other private financial information the former directors and officers provided for review to an independent third party, the Honorable John S. Martin, Jr.).

[4] In the course of settlement negotiations, the parties engaged the Honorable John S. Martin, Jr. to answer the question of "whether the Officer Defendants' combined *liquid* (including non-liquid assets which are easily converted to cash or the equivalent) net worth, exclusive of primary residences and pensions, exceeds $100 million." *See* DI 889, Ex. D (emphasis added). Judge Martin, faithful to this request, answered precisely the question put in front of him. *Id.* Ex. G, at 3. The question posed by the parties, however, did not inquire concerning assets that fell outside of the agreed upon definition of "liquid net worth." *See* DI 896, at 4-5.

3

Lead Counsel then filed additional material.[5] The supplemental material, however, did not fully address the Court's concerns, as the Court still lacked sufficient information regarding the former directors' and officers' ability to withstand a judgment in excess of the insurance money that had been offered in the D&O Settlement. The Court therefore directed that the officer defendants file for *in camera* review certain documents pertaining to both their liquid and non-liquid assets.[6] As the Court noted then,

> "the decision to accept or reject a proposed class action settlement always includes a comparison of the proposed settlement to the alternatives. Without knowing whether and to what extent these defendants could withstand a judgment in excess of the insurance money now on the table, the Court would be severely handicapped in coming to an informed view on the question before it."[7]

Having now received submissions from the officer defendants,[8] the Court has examined sufficient materials to rule on the proposed settlement.

*Class Action Settlement Approval Standards*

In evaluating a proposed class action settlement, a court first must make sure that it is procedurally fair.[9] This standard has been met here. The parties are represented by experienced

---

[5] DI 888; DI 889.

[6] DI 896. These documents, as noted in the Court's May 3 order, already had been turned over to the Honorable John S. Martin, Jr.

[7] *Id.* at 6-7.

[8] *See* DI 904-08.

[9] *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d. Cir. 1982) ("[A]ttention also has been paid to the negotiating process by which the settlement was reached, and courts have demanded that the compromise be the result of arm's-length negotiations and that plaintiffs'

4

and highly competent counsel, and the settlement was reached only after extensive arms-length negotiations.[10] The D&O Settlement is procedurally sound.

The Court must consider also whether the D&O Settlement is substantively fair, reasonable, and adequate. In making such judgments, courts look at the following criteria:

> "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[11]

In this case, many of these considerations readily counsel in favor of approval.

More than 900,000 copies of notice of the D&O Settlement were mailed to class members,[12] and summary notice was published in both *The Wall Street Journal* and *Investor's Business Daily*.[13] Class members therefore were advised of the existence and terms of the proposed

---

counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." (citing *Grinnell*, 495 F.2d at 463-66)).

[10] *See, e.g.*, *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 685235, at *1 (S.D.N.Y. Dec. 28, 2011); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also* DI 807, ¶¶ 11-88.

[11] *Grinell*, 495 F.2d at 463.

[12] DI 873, ¶ 3; *see also* DI 807, Ex. 2 (detailing efforts to notify class up through March 8, 2012).

[13] DI 807, Ex. 2, ¶ 12.

settlement. Only a handful objected.[14] None of the objectors were institutional investors, and those who did object constituted a very small part of the class.

Additionally, the parties and the Court are in agreement that proceeding to trial in this case would involve great expenditures of time and money. Lead Counsel correctly argue that the class would face considerable "risks in establishing liability and damages against the [Director and Officer] Defendants,"[15] all of whom already have succeeded in having certain of the claims brought against them dismissed.[16]

Furthermore, if the Court did not approve the D&O Settlement, the $90 million in Lehman insurance money currently on offer quickly would be depleted or consumed entirely. This would leave only the former directors and officers' own resources in the event the class were successful at trial.

Thus, the Court's remaining considerations center around the alternative to the D&O Settlement and whether, in light of the alternative, the proposed settlement is in the "range of reasonableness." This depends importantly on what assets – liquid and non-liquid – the former directors and officers would have to satisfy any judgment that might be entered against them in the event the class prevailed.

The Court has reviewed the essential documents filed *in camera* in order to make a practical judgment about whether it is reasonable to compromise this case, rather than pursuing it, in light of both the likelihood of ultimate success and the likelihood in the event of success of collecting

---

[14] An index and copies of the objections that were filed can be found at DI 874 & Exs. 1-9.

[15] DI 804, at 14.

[16] See *In re Lehman Brothers Secs. And ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011).

6

the eventual judgment given the resources of those defendants as to whom information is reasonably available.[17] While some may be concerned at the lack of any contribution by the former director and officer defendants to the settlement, Lead Counsel's judgment that the $90 million bird in the hand is worth at least as much as whatever is in the bush, discounted for the risk of an unsuccessful outcome of the case, is reasonable. Accordingly, having taken all of the *Grinell* factors into consideration, the Court concludes that the D&O Settlement is fair, reasonable, and adequate.

*Conclusion*

The motion to approve the D&O Settlement [DI 803] is hereby granted.

SO ORDERED

Date:       May 24, 2012

_____
Lewis A. Kaplan
United States District Judge

---

[17] *See, e.g., In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK), 2001 WL 170792, at *6 (S.D.N.Y. Feb. 22, 2001) ("[S]ettlement court must assess . . . fairness . . . in a practical way on the basis of reasonably available information.").