```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
In re LEHMAN BROTHERS SECURITIES
AND ERISA LITIGATION                                          : 09 MD 2017 (LAK)

                                                              : REPORT AND RECOMMENDATION

                                                              :
-------------------------------------------------------------X
```

THIS DOCUMENT RELATES TO: In re LEHMAN BROTHERS EQUITY/DEBT
SECURITIES LITIGATION, 08 Civ. 5523 (LAK) (GWG)

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Metropolitan Bank Group, Inc.; NC Bancorp, Inc.; and their affiliate banks (collectively "the Banks") have commenced an arbitration proceeding before the Financial Industry Regulatory Authority, Inc. ("FINRA") against SunTrust Robinson Humphrey, Inc., ("SunTrust"); its parent company SunTrust Banks, Inc.; and Jack A. Whitaker, Jr., an investment advisor for SunTrust. The Banks seek to recover from the defendants (whom we sometimes refer to collectively as "SunTrust") losses stemming from certain investments, including shares in certain Lehman Brothers ("Lehman") securities, that were made at the recommendation of the defendants. The Banks are also members of the plaintiff class in the Lehman Brothers Equity/Debt Securities Litigation which was partially settled on April 25, 2012.

In this motion, SunTrust seeks to enjoin the Banks from making certain claims in the FINRA arbitration on the grounds that these claims are barred by the settlement in the class action.[1] For the reasons stated below, that motion should be denied.

---

[1] See SunTrust Robinson Humphrey, Inc. Notice of Motion to Enforce Class Action Settlement and Enjoin Arbitration of Released Claims, filed May 18, 2012 (Docket # 917) ("Mot."); Memorandum of Law in Support of SunTrust Robinson Humphrey, Inc's Motion to Enforce Class Action Settlement and Enjoin Arbitration of Released Claims, filed May 18, 2012

I.      BACKGROUND

       A.      <u>The Allegations Against SunTrust in the Class Action Complaint</u>

The Lehman Brothers Equity/Debt Securities Litigation is a class action brought on behalf of anyone who acquired certain Lehman Brothers Holdings Inc securities. See Third Amended Class Action Complaint for Violations of the Federal Securities Laws, filed Apr. 23, 2010 (Docket # 212 in 08 Civ. 5523) ("Compl.") ¶¶ 17, 24. In the complaint, plaintiffs asserted that the offering materials for these securities "contained untrue statements and omitted materials [sic] facts concerning" certain aspects of Lehman's financial results and operations, "which allowed Lehman to raise over $31 billion." Id. ¶ 1.[2] More specifically, the plaintiffs made the following allegations regarding the offering materials: (1) that Lehman engaged in practices that "had the effect of artificially and temporarily reducing Lehman's net leverage ratio each quarter . . . rendering Lehman's statements concerning net leverage and financial condition materially false and misleading;" (2) that the offering materials failed to disclose that Lehman "regularly disregarded and exceeded its risk limits"; (3) that the offering materials understated Lehman's risk; (4) that the offering materials materially overstated the value of Lehman's commercial real

---

(Docket # 918) ("Mem. of Law"); Declaration of Richard T. Marooney, filed May 18, 2012 (Docket # 919) ("Marooney Decl."); Metropolitan Bank Group, Inc. and NC Bancorp, Inc.'s Memorandum in Opposition to SunTrust Robinson Humphrey, Inc.'s Motion to Enforce Class Action Settlement and Enjoin Arbitration of Released Claims, filed May 25, 2012 (Docket # 933) ("Opp."); Declaration of Jospeh C. Peiffer, dated May 25, 2012 ("Peiffer Decl.") (annexed to Opp.); Reply Memorandum of Law in Support of SunTrust Robinson Humphrey, Inc.'s Motion to Enforce Class Action Settlement and Enjoin Arbitration of Released Claims, filed June 1, 2012 (Docket # 943) ("Reply"); Supplemental Declaration of Richard T. Marooney, filed June 1, 2012 (Docket # 944).

     [2] "Offering Materials" are defined in the complaint as "[t]he Shelf Registration Statement, together with the prospectuses, prospectus supplements, product supplements and pricing supplements, as well as all SEC filings incorporated therein" for the Lehman securities at issue. Compl. at 1 n.1. We use the same definition here.

estate holdings; and (5) that the offering materials "failed to disclose material facts concerning [Lehman's] concentration of mortgage and real estate related assets, preventing investors from meaningfully assessing the Company's exposure to these risky assets." Id.

The plaintiffs made claims arising under various legal theories against a number of defendants, including Lehman employees, its directors, its auditor, as well as underwriters. Id. ¶¶ 8-16. SunTrust is one of the "Underwriter Defendants." See Compl. ¶ 16; Appendix A (annexed to Compl.) ("App'x A"). Included among the securities at issue in the class action are Non-Cumulative Perpetual Preferred Stock, Series J ("Series J Shares"). See App'x A.

The Underwriter Defendants are named in only Count I of the complaint, which alleges a violation of Section 11 of the Securities Act, 15 U.S.C. § 77k. See Compl. ¶¶ 16, 121. Plaintiffs allege that the Underwriter Defendants underwrote offerings "which were sold pursuant to materially false and misleading Offering Materials." See id. ¶ 16. Plaintiffs allege that the Underwriter Defendants "owed to the purchasers of the securities . . . the duty to make a reasonable and diligent investigation of the statements contained in the Shelf Registration Statement, and any incorporated documents, at the time each such Offering became effective to ensure that said statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue or misleading." Id. ¶ 126. The complaint alleges that the Underwriter Defendants in fact "acted negligently and are liable to members of the Class who purchased or otherwise acquired Lehman securities sold pursuant or traceable to the Offering Materials and Lehman Structured Note Offering Materials for the respective Offerings in which each Underwriter Defendant participated." Id. ¶ 125.

      B.     <u>The Settlement of the Class Action</u>

On December 12, 2011, the plaintiffs filed stipulations of settlement and release with the Underwriter Defendants, including SunTrust. <u>See</u> Stipulation of Settlement and Release, filed Dec. 12, 2011 (Docket # 541) ("Second Stipulation"); <u>see</u> Stipulation of Settlement and Release, dated Dec. 2, 2011 (annexed to Second Stipulation) ("First Stipulation"). Several months later, a notice was sent to all class members informing them of the potential settlement. <u>See</u> Notice of Pendency of Class Action and Proposed Settlement with the Settling Underwriter Defendants, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (annexed as Ex. 3 to Marooney Decl.) ("Notice"). The Notice specified that class members would be releasing the Settling Underwriters, including SunTrust, for claims as set forth in the stipulations. <u>Id.</u> at 6. The Notice stated that class members could "take steps to exclude [themselves] from the settlement" if they wanted "to keep the right to sue or continue to sue the Settling Underwriter Defendants on [their] own about the same claims being released in the Underwriter Settlement." <u>Id.</u> The Notice specified that "[u]nless [a class member] exclude[s] [itself], [it] give[s] up any right to sue the Settling Underwriter Defendants or any of the other released parties for the claims being released by the Underwriter Settlement." <u>Id.</u> at 7. The Notice warned that if a class member had "a pending lawsuit relating to the claims being released in the Action against any of the Settling Underwriter Defendants, [it] should speak to [its] lawyer in that case immediately." <u>Id.</u>

On April 25, 2012, the district court approved the settlement. <u>See</u> Judgment and Order Approving Settlement Between Lead Plaintiffs and the Settling Underwriter Defendants, filed May 2, 2012 (Docket # 397 in 08 Civ. 5523) ("Judgment"). SunTrust was named in the order as a settling defendant. <u>See id.</u> The Judgment incorporated the definitions in the First and Second

4

Stipulations and included the definition of settled claims. The definition provides as follows:

> "Settled Claims" shall mean any and all claims, rights, demands, liabilities and causes of action of every nature and description, to the fullest extent that the law permits their release in this Action, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, whether class or individual in nature, that Lead Plaintiffs or any other members of the Settlement Class: (a) alleged in the Complaint, or (b) could have asserted in any forum that arise out of or are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint and that arise out of the Settlement Class Member's purchase or acquisition of the Lehman Securities pursuant or traceable to the Shelf Registration Statement and Offering Materials incorporated by reference in the Shelf Registration Statement.

Id. ¶ 1(c).

The Banks did not exclude themselves from the class action settlement, and submitted a notice of claim to collect under the settlement. See Letter from Joseph C. Peiffer to David L. Balser, dated May 11, 2012 (annexed as Ex. 7 to Marooney Decl.).

   C.  The Claims in the FINRA Arbitration

Before the settlement was reached in the class action, the Banks filed a Statement of Claim with FINRA seeking relief from SunTrust. See Statement of Claim, dated Jan. 14, 2011 (annexed as Ex. 2 to Marooney Decl.) ("FINRA Claim"). In the FINRA arbitration, the Banks seek to recover against SunTrust for certain investment losses, including those stemming from their purchases of the Series J Shares. See id. ¶¶ 12, 18. The Banks allege that SunTrust acted as a broker for them and that they "came to rely on SunTrust['s] . . . knowledge and experience in determining which investments would best suit the needs of" the Banks. FINRA Claim ¶¶ 8, 10. The Banks allege that SunTrust "should not have recommended and sold" various stocks to them, including the Lehman shares. Id. ¶ 12. The basis for this contention is not that there were any material misrepresentations or omissions in the offering materials for these securities,

5

but rather that regulations of the Federal Deposit Insurance Corporation's ("FDIC") prohibit the Banks, as state-chartered banks, from owning preferred stock, such as the Lehman stock, where the stock is not "predominantly debt-like." Id. ¶¶ 15, 16. The Banks assert that "[a]ny diligent, prudent broker who undertakes to advise a bank on its investments knows, or should know, about these critical regulations and their interpretation." Id. ¶ 15. The Banks claim that under the relevant rules and interpretations, the Lehman stock was not "predominantly debt-like" because it failed to meet certain "debt obligation factors." Id. ¶¶ 17, 19. Importantly, the Banks' contentions on this score rely on the characteristics of the stock itself, see id. ¶ 19 – not on any alleged misstatements or omissions in the stock's offering materials.

Additionally, the FINRA Statement of Claim points to a separate reason why SunTrust should not have recommended the stock at issue: the stock was based on "the housing and mortgage sectors of [the] America[n] economy" and these investments were therefore "far too risky under the circumstances for regulated banks to hold." Id. ¶ 24. The Banks point to various warnings – both in public disclosures and internal positions taken at SunTrust – to support their view that SunTrust should have known about the risky nature of these investments. See id. ¶¶ 25-27. The Banks assert that SunTrust should have known about the "appropriate risk tolerances" for the Banks. Id. ¶ 28.

The Banks assert three causes of action against SunTrust. In the first claim, breach of fiduciary duty, the Banks assert that SunTrust, as an "advisor and broker," had a fiduciary duty to the Banks and that SunTrust breached that duty by recommending and selling the Lehman stock given that the Banks' investment in the stock was legally barred and too risky for them. Id. ¶¶ 31, 33. In the second claim for relief, violation of FINRA rules, the Banks assert that SunTrust had a duty to know its customers and "to determine whether particular investments

6

were suitable for them." Id. ¶ 36.  In the third claim for relief, negligence, the Banks allege that SunTrust failed to act with due care in relation to its recommendation and sale to the Banks of the stock.  Id. ¶ 43.

II.     THE COURT'S POWER TO ENJOIN THE FINRA ARBITRATION

SunTrust now moves to enjoin the FINRA arbitration based on the release effectuated by the class action settlement.  As an initial matter, we must consider the question of whether this Court has the power to issue an order enjoining the FINRA arbitration.  The Second Circuit's recent decision in In re American Express Financial Advisors Securities Litigation, 672 F.3d 113, 127 (2d Cir. 2011) ("American Express") is procedurally identical with the instant case in all material respects and definitively answers the question.  In American Express, the Second Circuit held that where a district court has retained jurisdiction to enforce a settlement agreement, "it necessarily makes compliance with the terms of the settlement agreement a part of its order so that a breach of the agreement would be a violation of the order."  672 F.3d at 134 (internal quotation marks, punctuation, and citations omitted).  In such cases, the court "'has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction.'"  Id. (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 367-68 (3d Cir. 2001)); see generally Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974) ("district court ha[s] not only the power but the duty to enforce a settlement agreement which it ha[s] approved.").  Where the relitigation at issue is an arbitration, American Express held that a court has "authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement."  672 F.3d at 141.  The court's ability to enjoin the arbitration arises from

the fact that where a previously-existing agreement to arbitrate has been superseded by a release contained in a settlement agreement, the claims within the release are no longer "covered by a valid and binding arbitration agreement." Id. American Express also made clear that whether a claim that would otherwise be subject to arbitration survives a class action settlement is a "question of arbitrability" that is reserved to the court. Id. at 131.

Here, the Court retained jurisdiction to enforce the settlement agreement reached in the Lehman class action. See Judgment ¶ 15. Accordingly, this Court has power to enforce the settlement agreement by enjoining the FINRA arbitration if that arbitration requires the adjudication of claims that were barred by the release in the class action settlement.

While it not dispositive of any point, we note that the entire arbitration is not at issue in this case. SunTrust does not dispute that the Banks' claims should be subject to FINRA arbitration with respect to claims other than those involving the Series J Shares. See Mem. of Law at 2-3. Thus, the issue in the current dispute is whether the claims against SunTrust concerning the Series J Shares in the FINRA arbitration survived the class settlement.

III.   DISCUSSION

    A.   The Settlement's Release of Claims

"Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so." Am. Express, 672 F.3d at 129 (citing cases). The Banks admit that they did not opt out of the settlement agreement and thus are bound by its release. See Opp. at 13. Under the terms of the judgment, "settled claims" that are released are defined as:

> any and all claims, rights, demands, liabilities and causes of action of every nature and description, to the fullest extent that the law permits their release in this Action . . . that Lead Plaintiffs or any other members of the Settlement Class:

>    (a) alleged in the Complaint, or (b) could have asserted in any forum that arise out of or are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint.

Judgment ¶ 1(c); First Stipulation ¶ 1(ii).

The Banks argue that the release "only covers claims that arise out of allegations similar to those that form the basis of this action." Opp. at 14. In fact, the release also covers claims that "are related to . . . facts . . . involved" in the Complaint – terminology that the Court views as far broader then claims that merely "arise out of" the claims in the complaint. But as broad as the release language may be, and assuming arguendo it covers the FINRA claims at issue here, Second Circuit case law makes clear that a court must not simply interpret the language of the release, but also should consider whether there was authority to enter into the release on behalf of the class for the particular claims at issue inasmuch as a settlement agreement "cannot release claims that the parties were not authorized to release." American Express, 672 F.3d at 135.[3]

Both parties agree, see Opp. at 14; Reply at 10, 15, that the arbitration must be enjoined if the FINRA claims do not meet the "identical factual predicate" and "adequacy of representation" limitations on class action settlements as expressed in case law. See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2d Cir.) cert. denied 544 U.S. 1044 (2005); In re WorldCom, Inc. Sec. Litig., 2007 WL 1946685, at *6-8 (S.D.N.Y. July 5, 2007) ("WorldCom") (considering whether arbitration should be enjoined based on the applicability of those doctrines), aff'd 309 F. App'x 469 (2d Cir. 2009) (summary order). Accordingly, we turn

---

[3] Indeed, the Judgment itself recognizes that the release of claims is valid only to the extent that the law "permits." Judgment ¶ 1(c);

next to discuss the applicability of the "identical factual predicate" doctrine inasmuch as it is dispositive here.

### B. The "Identical Factual Predicate" Doctrine

As the Second Circuit has put it, "[a]ny released claims not presented directly in [a class action] complaint . . . must be based on the identical factual predicate as that underlying the claims in the settled class action." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 248 (2d Cir. 2011) (internal quotation marks and citation omitted); accord TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982) ("[A] court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."); Wal-Mart Stores, 396 F.3d at 107. The underlying principle is that "[i]f a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either." Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 660 F.2d 9, 18 (2d Cir. 1981).

"When considering the permissibility of a release, the overlap between elements of claims is not dispositive. Class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims." Wal-Mart Stores, 396 F.3d at 108 (emphasis in original). In other words, "a settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts." Nat'l Super Spuds, 660 F.2d at 18 n.7. Thus, in deciding whether the release covers the FINRA claims, we ignore the legal theories alleged in both actions and instead focus on the factual predicate.

The Second Circuit has noted that courts will decline to uphold releases where the claim purportedly released required "proof of further facts." TBK Partners, 675 F.2d at 462 (internal quotation marks and citation omitted); accord Consol. Edison, Inc. v. Ne. Utils., 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004). In this case, there are some common factual elements to the class action claims and the FINRA claims: specifically, both involve claims concerning losses from Series J Shares of Lehman and both are brought against SunTrust. But the overlap begins and ends there. As was already described in detail, the class action consisted of claims that SunTrust bore responsibility (along with others) for material misstatements and omissions in the offering materials for the Series J Shares. The class action complaint relied on allegations regarding the alleged misstatements and omissions of the offering materials. None of these factual allegations, however, are involved in the FINRA claims.

Instead, the FINRA claims will require proof of entirely different facts, starting with proof that the Banks relied on SunTrust's knowledge and experience in determining which investments would best suit their needs; that governing FDIC regulations and interpretations allow national banks to own preferred shares only when the characteristics are "predominantly debt-like;" that SunTrust should have known this; and that the Lehman stock was not "predominantly debt-like" because it did not meet certain "debt obligation factors." FINRA Claim ¶¶ 8, 10, 15-19. The Banks' claims also rely on allegations that the stock was based on "the housing and mortgage sectors of [the] America[n] economy;" that in light of information contained in public disclosures and within the knowledge of SunTrust, the Series J stock was too risky for regulated banks to own; and that therefore SunTrust should not have recommended the Lehman stock. Id. ¶¶ 24-28. In light of the differences in factual predicates for the class action claims and the FINRA claims, it is beyond peradventure that the FINRA claims rely not only

11

"upon a different legal theory, but upon proof of further facts." TBK Partners, 675 F.2d at 462 (internal quotation marks and citation omitted).  Or, to use the formulation of another Second Circuit case, the Banks' FINRA claims do not "depend[] upon the very same set of facts" as the class action claims.  Super Spuds, 660 F.2d at 18 n.7.  Instead, they require proof of numerous additional facts that are central to the claim in the FINRA arbitration.

SunTrust asserts that the mere fact that the claims involve losses from the same securities against the same defendants is enough to meet the "identical factual predicate" test.  Reply at 10. But under this reasoning, as pointed out by the Banks, a claim that SunTrust purchased the securities without the Banks' consent would be barred by the class action settlement.  It seems obvious, however, that such a claim would not involve the "identical factual predicate" as the class action claims based on misrepresentations and omissions in the offering materials, and that a class action could not settle such claim.  Yet, there is little to distinguish such a hypothetical claim from the Banks' claim in the FINRA arbitration in regard to its connection with the factual predicate of the class action.  As is true for both claims, the only connection to the class action complaint is the fact that the same securities are at issue and the same defendant is named.[4]

For case law supporting its position that the cases involve identical factual predicates, SunTrust relies heavily on WorldCom.  But while WorldCom shares some similarities with the situation here, it does not call for a different result.  In WorldCom, two class members who settled securities fraud claims against underwriters regarding WorldCom stock sought to bring claims against the same underwriters in their capacity as brokers (or financial advisors) in an arbitration for "inappropriate and unsuitable" investment recommendations.  2007 WL 1946685,

---

[4] The Banks agree that they will offset the settlement proceeds against any recovery in the arbitration attributable to the Series J Shares.  See Peiffer Decl., Ex. F.

at *4.  In finding that the arbitration claims were based on the identical factual predicate as the class claims, the district court specifically noted that the plaintiffs' claims in arbitration were "just another expression of their belief that they should have been warned that <u>the publicly disclosed information about WorldCom was unreliable</u> and that their WorldCom holdings were a riskier investment than they understood at the time."  <u>Id.</u> at *6 (emphasis added).  Here, by contrast, there is no claim in the arbitration that attacks the reliability of the Series J stock's offering materials or SunTrust's role in the dissemination of those materials.  Rather, the arbitration claim assumes the correctness of those materials.  It also makes no claim that the offering materials misled plaintiffs as to the nature of the risk of the investment.  Rather, the Banks' claims allege that the Series J Shares were legally impermissible investments under governing rules and that this was apparent from the face of the offering materials.

      SunTrust also points to the <u>TBK Partners</u> case, asserting that <u>TBK Partners</u> involved an effort by class members to pursue claims that both "hinged on the correct valuation of whatever reversionary interest in a telegraph business lease was owed to the company's shareholders." Reply at 13 (citing <u>TBK Partners</u>, 675 F.2d at 460-61).  SunTrust argues that, as was true in <u>TBK Partners</u> , the class action claim and the FINRA claim both "hinge" on the "amount" plaintiffs are "entitled to recover on their investment losses" in the Series J Shares.  <u>Id.</u>  But the actual amount of the investment losses is just one fact common to both cases – if it is even disputed. By contrast in <u>TBK Partners</u> the <u>sole</u> material factual issue that was resolved in the class action case was the valuation of the reversionary interest belonging to the plaintiff.  <u>See</u> 675 F.2d at 461.  In <u>TBK Partners</u>, the plaintiff sought to relitigate this identical valuation in a state court proceeding.  <u>Id.</u> at 459.  The plaintiff would not have had to prove any further facts in the state

13

court proceeding. TBK Partners thus provides no support for SunTrust's position.[5]

The "identical factual predicate" limitation is certainly an elusive concept and is obviously – indeed, tautologically – fact-dependent. But, as stated in TBK Partners, the case that first articulated the test, it rests on the notion there is a value in achieving "a comprehensive settlement that will prevent relitigation of settled questions at the core of a class action." 675 F.2d at 460. The "core" of the class action here is the plaintiffs' contention that the "offering materials" of the stock at issue "contained untrue statements and omitted materials facts." Compl. ¶ 1. As already described, this "core" has nothing to do with the claims in the FINRA arbitration.

The Court recognizes that, to encourage settlements, defendants in a class action must have confidence that the settlement will end their exposure the class claims. Wal–Mart, 396 F.3d at 106 ("[p]ractically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability") (internal quotation marks, punctuation, and citation omitted). But if the courts' sole mission were to encourage class action settlements, courts would not have imposed the "identical factual predicate" limitation at all and we would instead allow broad class action settlement releases to bar claims that in any way relate to facts alleged in the class action complaint. That is not the law, however, and thus this Court is bound to impose limits on the breadth of a class action release as reflected in decisional law. Here, the Court cannot conclude that the FINRA claims involve the "identical factual predicate" as the claims in the class action complaint. Accordingly, the application to enjoin the FINRA

---

[5] SunTrust also points to In re VMS Securities Litigation, 145 F.R.D. 458 (N.D. Ill. 1992). See Reply at 9. VMS Securities, however, involved the construction of a class action settlement release and thus did not apply the "identical factual predicate" limitation. See 145 F.R.D. at 460-61.

arbitration should be denied.

IV.   CONCLUSION

For the foregoing reasons, the motion to enforce the settlement and enjoin the arbitration (Docket # 917) should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: June 29, 2012
         New York, New York

                                                GABRIEL W. GORENSTEIN
                                                United States Magistrate Judge

arbitration should be denied.

IV.   CONCLUSION

For the foregoing reasons, the motion to enforce the settlement and enjoin the arbitration (Docket # 917) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: June 29, 2012
       New York, New York

                                              _____
                                              GABRIEL W. GORENSTEIN
                                              United States Magistrate Judge

15