**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION | Case No. 09-MD-2017 (LAK) |
| This Document Applies To: | ECF CASE |
| In re Lehman Brothers Equity/Debt Securities Litigation, 08-CV-5523-LAK | |

**THE STRUCTURED PRODUCTS CLASS REPRESENTATIVES'**
**MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      Preliminary Statement..................................................................................................1

II.     Factual and Procedural Background .........................................................................2

        A.      Plaintiffs and Their Claims .............................................................................2

        B.      Appointment of Lead Plaintiffs, Lead Counsel and the Executive Committee ........3

        C.      Plaintiffs' Complaints and Defendants' Motions to Dismiss..................................3

        D.      Discovery .....................................................................................................5

        E.      *NECA-IBEW* and Plaintiffs' Motion for Reconsideration......................................7

        F.      Class Certification ..........................................................................................7

        G.      UBS's Rule 23(f) Petition ................................................................................8

        H.      Plaintiffs Renew Their Motion for Reconsideration...............................................8

        I.      Settlement Negotiations...................................................................................9

III.    Notice of Class Certification and Settlement....................................................................10

IV.     Final Certification of the Settlement Class .....................................................................11

        A.      Numerosity.....................................................................................................12

        B.      Commonality...................................................................................................12

        C.      Typicality.......................................................................................................13

        D.      Adequacy .......................................................................................................13

        E.      Predominance.................................................................................................15

        F.      Superiority......................................................................................................17

V.      Final Approval of the Settlement ...................................................................................18

        A.      The Settlement Is Procedurally Fair ..................................................................18

        B.      The Settlement is Substantively Fair ..................................................................19

|       | 1.  | The Complexity, Expense and Likely Duration of the Litigation | 20 |
|-------|-----|--------------------------------------------------------------|----|
|       | 2.  | The Reaction of the Class to the Settlement | 21 |
|       | 3.  | The Stage of the Proceedings and the Amount of Discovery Completed | 22 |
|       | 4.  | The Risks of Establishing Liability and Damages | 22 |
|       | 5.  | The Risks of Maintaining the Class Action Through Trial | 23 |
|       | 6.  | The Ability of Defendants to Withstand a Greater Settlement | 23 |
|       | 7.  | The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation | 24 |
| VI.   | Final Approval of the Plan of Allocation | | 26 |
| VII.  | Conclusion | | 27 |

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*
  521 U.S. 591
  117 S. Ct. 2231(1997)..................................................................................................... 16, 17

*Brown v. Kelly*
  609 F.3d 467 (2d Cir. 2010)............................................................................................. 17

*Central States Southeast & Southwest Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, LLC*
  504 F.3d 229 (2d Cir. 2007)............................................................................................. 12

*Charron v. Pinnacle Group N.Y., LLC*
  874 F. Supp. 2d 179 (S.D.N.Y. June 6, 2012) ................................................................. 20, 23

*Charron v. Wiener*
  2013 WL 5420976 (2d Cir. Sept. 30, 2013) .................................................................... 13, 23

*City of Detroit v. Grinnell Corp.*
  495 F.2d 448 (2d Cir. 1974 ......................................................................................... 1, 19, 21

*Consolidated Rail Corp. v. Town of Hyde Park*
  47 F.3d 473 (2d Cir. 1995)............................................................................................... 12

*D'Amato v. Deutsche Bank*
  236 F.3d 78 (2d Cir. 2001)............................................................................................... 18, 24

*General Telephone Co. of Southwest v. Falcon*
  457 U.S. 147
  102 S. Ct. 2364 (1982)..................................................................................................... 12

*Goldberger v. Integrated Resources, Inc.*
  209 F.3d 43 (2d Cir. 2000)............................................................................................... 19

*Goldman, Sachs & Co. v. NECA-IBEW Health & Welfare Fund*
  2013 WL 1091772 (U.S. Mar. 18, 2013) ......................................................................... 8

*Hall v. Children's Place Retail Stores, Inc.*
  669 F. Supp. 2d 399 (S.D.N.Y. 2009)............................................................................... 26

*Hicks v. Stanley*
  2005 WL 2757792 (S.D.N.Y. Oct. 19, 2005) .................................................................. 21

*In re American Bank Note Holographics, Inc.*
127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................... 20

*In re Bear Stearns Co., Inc. Securities, Derivative & ERISA Litig.*
909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................... 21, 23

*In re China Sunenergy Securities Litig., Inc.*
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................ 25

*In re Citigroup Inc. Securities Litig.*
2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013) ................................... passim

*In re Drexel Burnham Lambert Group, Inc.*
960 F.2d 285 (2d Cir. 1991)................................................................ 15

*In re Flag Telecom Holdings, Ltd. Securities Litig.*
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................................... 18, 20

*In re Giant Interactive Group, Inc. Securities Litig.*
279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................... 11, 24

*In re Global Crossing Securities & ERISA Litig.*
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................. 20, 22, 26

*In re IndyMac Mortgage-Backed Securities Litig.*
286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................ 16

*In re Initial Public Offering Securities Litig.*
671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................... 25

*In re Ira Haupt & Co.*
304 F. Supp. 917 (S.D.N.Y. 1969)....................................................... 23

*In re Marsh & McLennan Co., Inc. Securities Litig.*
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................. 11, 17

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*
2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ....................................... 26

*In re Nortel Networks Securities Litig.*
2006 WL 3802198 (S.D.N.Y. Dec. 26, 2006) ....................................... 26

*In re PaineWebber Inc. Ltd. Partnerships Litig.*
117 F.3d 721 (2d Cir. 1997)................................................................ 24

*In re PaineWebber Ltd. P'ships Litig.*
   147 F.3d 132 (2d Cir. 1998)......................................................................... 18

*In re PaineWebber Ltd. Partnerships Litig.*
   171 F.R.D3. 104 (S.D.N.Y. 1997) ......................................................... 24, 26

*In re Salomon Analyst Metromedia Litig.*
   544 F.3d 474 (2d Cir. 2008)......................................................................... 15

*In re Sony SXRD Rear Projection Television Class Action Litig.*
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............................................. 24

*In re Telik, Inc. Securities Litig.*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................... 18, 26

*In re WorldCom, Inc. Securities Litig.*
   219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................... 16

*In re WorldCom, Inc. Securities Litig.*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................... 26

*Joel A. v. Giuliani*
   218 F.3d 132 (2d Cir. 2000)......................................................................... 18

*Maley v. Del Global Technologies Corp.*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................... 20, 22, 26

*Marisol A. v. Giuliani*
   126 F.3d 372 (2d Cir. 1997)......................................................................... 12

*Matrixx Initiatives, Inc. v. Siracusano*
   131 S. Ct. 1309 (2011).................................................................................. 16

*McBean v. City of New York*
   233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................... 21, 24

*Moore v. PaineWebber, Inc.*
   306 F.3d 1247 (2d Cir. 2002)....................................................................... 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*
   693 F.3d 145 (2d Cir. 2012)............................................................... 7, 9, 14

*Newman v. Stein*
   464 F.2d 689 (2d Cir. 1972)......................................................................... 24

*Public Employees' Retirement System of Miss. v. Merrill Lynch & Co., Inc.*
  277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................ 12, 16

*Robinson v. Metro-North Commuter R.R. Co.*
  267 F.3d 147 (2d Cir. 2001) ..................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ............................................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005) ................................................................................. passim

*Weinberger v. Kendrick*
  698 F.2d 61 (2d Cir. 1982) ................................................................................. 11, 24

**Statutes**

15 U.S.C. § 77*l* ........................................................................................................... 16

15 U.S.C. § 78u-4 ....................................................................................................... 10

15 U.S.C. §§ 77k .......................................................................................................... 16

**Other Authorities**

*Manual for Complex Litigation* (Third) (1995) .......................................................... 18

**Rules**

Fed. R. Civ. Proc. 23 ............................................................................................. passim

Fed. R. Civ. Proc. 26 ..................................................................................................... 5

Fed. R. Civ. Proc. 54 ..................................................................................................... 8

# I.    Preliminary Statement

The Structured Products Plaintiffs[1] and UBS Financial Services, Inc. have agreed to settle for $120 million. The settlement allows class members to collect at least 15.5% of their maximum statutory damages—substantially more if one takes into account the likely impact at trial of UBS's offset rights. The settlement compares favorably with other securities class action settlements in general and those arising out of the 2008 credit crisis in particular. Plaintiffs now ask the Court to grant final certification of the settlement class and final approval of the settlement and plan of allocation.

The settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). It includes all 84 Lehman-issued structured product offerings sold by UBS between March 2007 and June 2008. The Structured Products Plaintiffs have class standing to represent, and are typical of, investors in all 84 offerings. The class is also sufficiently numerous, the class representatives adequately represent the interests of all class members, and common issues predominate over individualized issues. In addition, settling now on a class wide basis is superior to requiring class members to initiate thousands of individual arbitrations.

The settlement should be approved because it is both procedurally and substantively fair to class members. The parties settled only after extended arms'-length negotiations and with the assistance of a highly respected mediator. Consideration of the factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), confirms that the settlement is substantively fair

---

[1] Unless otherwise noted, the terms "Plaintiffs," "Structured Products Plaintiffs" and "Structured Products Class Representatives" refer to Mohan Ananda, Richard Barrett, Ed Davis, Neel Duncan, Rick Fleischman, Nick Fotinos, Gastroenterology Associates, Ltd. Profit Sharing Plan and Trust FBO Charles M. Brooks, MD, Stephen Gott, Karim Kano, David Kotz, Barbara Moskowitz, Ronald Profili, Joseph Rottman, Shea-Edwards Limited Partnership, Juan Tolosa, Grace Wang and Miriam Wolf.

as well.  In addition to recovering a higher percentage of statutory damages than comparable securities class action settlements, the settlement was reached only after the parties had completed a significant amount of discovery.  Plaintiffs were therefore in a good position to evaluate the strengths and weaknesses of their case and the risks involved in establishing liability and damages at trial.  The plan of allocation is also fair and reasonable.  It was developed with the assistance of an expert consulting firm and provides for pro rata distribution of the net settlement fund among class members by reference to the provisions for the calculation of damages under the Securities Act.

Plaintiffs request that the Court grant final certification of the settlement class and final approval of the settlement and the plan of allocation.

## II.      Factual and Procedural Background

### A.      Plaintiffs and Their Claims

Plaintiffs are eighteen retail investors who purchased Lehman-issued structured products from UBS.  They include a retired high school teacher, an oil and gas exploration specialist, a retired boiler technician, real estate developers, two attorneys, a retired engineer, and a widow who serves as trustee of her late husband's pension plan.  Many of them purchased the Lehman notes with retirement funds.  Plaintiffs allege that UBS, as seller and underwriter of the Lehman structured products, violated sections 11 and 12(a)(2) of the Securities Act when it offered and sold the notes pursuant to offering documents that contained materially false and misleading statements and material omissions about Lehman's financial condition and the principal protection feature of the notes.

**B.      Appointment of Lead Plaintiffs, Lead Counsel and the Executive Committee**

The first cases brought by investors in UBS-underwritten structured products and "principal protection" notes were filed in the fall of 2008, after Lehman filed for bankruptcy. Girard Decl., ¶ 1.  The structured product cases asserted claims against UBS, as the underwriter and seller of the structured products, and against certain directors and officers of Lehman.

Beginning in June 2008, before Lehman's bankruptcy, a series of proposed class actions alleging violations of the federal securities laws on behalf of investors in various Lehman-issued securities other than structured products (including stocks, bonds and options) had been filed in the Southern District of New York and related before this Court.  Girard Decl., ¶ 3.  On July 31, 2008, the Court appointed Lead Plaintiffs and Lead Counsel in the pending Lehman equity/debt cases.  Case No. 08 Civ. 5523, ECF No. 18.

On January 9, 2009, the Court issued an order consolidating the various cases asserting claims based on Lehman securities (including the Lehman equity/debt cases and the structured product cases) and appointed Lead Plaintiffs and Lead Counsel.  The Court also established a Plaintiffs' Executive Committee composed of Lead Counsel in the equity/debt litigation, the mortgage-backed securities litigation and the ERISA litigation, and Daniel Girard of Girard Gibbs, who was appointed to represent the interests of the Structured Products Plaintiffs.  ECF No. 1. [2]

**C.      Plaintiffs' Complaints and Defendants' Motions to Dismiss**

Plaintiffs filed the Second Amended Consolidated Complaint in February 2009.  ECF No. 30.  The complaint alleged that UBS, as the underwriter and seller of the 84 structured product

---

[2] Unless otherwise noted, the ECF cites are to the *In re Lehman Brothers Securities and ERISA Litigation* docket, 09-MD-2017-LAK.

offerings identified in the complaint, was liable under sections 11 and 12(a)(2) for the material misstatements and omissions in the offering materials about Lehman's financial condition and creditworthiness, as well as the "principal protection" feature of some of the structured products. The Structured Products Plaintiffs also asserted claims against certain of Lehman's officers and directors under sections 11 and 15. Defendants moved to dismiss. UBS argued that the Structured Products Plaintiffs lacked standing to bring claims as to offerings in which no named plaintiff purchased, and that there were no material misstatements or omissions in the offering documents about Lehman's financial condition or the principal protection feature. ECF Nos. 91-93. Plaintiffs opposed, defendants filed reply papers and the Court took the motions under submission after hearing oral argument on January 26, 2010.

While the motions to dismiss were pending, Anton R. Valukas, the Lehman Bankruptcy Examiner, issued his 2,200 page report on the potential claims of the Lehman estate. Less than a week after it was issued, the Court convened a telephonic conference with the parties to address the impact of the Examiner's Report. The Court then denied the pending motions to dismiss without prejudice and granted Plaintiffs leave to amend. ECF No. 240.

Plaintiffs filed the Third Amended Complaint on April 23, 2010. ECF No. 278. The complaint incorporated information from the Examiner's Report. In response to the Court's statement at oral argument on motions to dismiss that it would dismiss claims based on offerings that were not purchased by the Plaintiffs, the complaint also added 16 new Structured Products Plaintiffs who purchased 25 previously unrepresented offerings. Ernst & Young was also added as a defendant.

Defendants moved to dismiss again in June 2010. UBS again argued that the Structured Products Plaintiffs lacked standing to bring claims with respect to offerings in which no named

plaintiff purchased, that there were no material misstatements or omissions in the offering documents, and that certain claims were time-barred. ECF Nos. 293-295. With regard to standing, the Structured Products Plaintiffs pointed out that because each structured product was issued pursuant to the same base prospectus and prospectus supplement and because these common prospectuses incorporated by reference the SEC filings that Plaintiffs alleged included material misstatements and omissions, the actionable statements were essentially the same for each structured product offering and Plaintiffs had standing to represent investors in other offerings. ECF No. 305 at 45. Defendants filed their replies in July 2010. ECF Nos. 307-309.

On July 27, 2011, the Court issued an opinion granting in part and denying in part the motions to dismiss. The Court held that the complaint stated section 11 and 12(a)(2) claims with respect to the principal protection feature of the structured products and certain aspects of Lehman's financial condition. The Court also found that the structured product offerings purchased by newly added Plaintiffs were timely, except for claims for offerings made on or before March 30, 2007, which the Court found to be time-barred. The Court dismissed claims asserted on behalf of investors in the offerings in which none of the Plaintiffs had invested. Ernst & Young's motion to dismiss the Structured Products Plaintiffs' claims was granted, but the Court upheld Lead Plaintiffs' section 10(b) claims against Ernst &Young. ECF No. 439.

### D. Discovery

After the Court denied the motions to dismiss in July 2011, the parties conducted their Rule 26(f) conference and filed their Rule 26(f) report on November 1, 2011. ECF No. 488. The Court held a hearing on November 8, 2011, and issued Pretrial Order No. 23 the next day, allowing document discovery and depositions of class representatives to begin, denying UBS's request to bifurcate discovery, and setting a briefing schedule for class certification. ECF No. 502. By this point in the litigation, Lead Plaintiffs and the Structured Products Plaintiffs shared

claims against the Lehman officer and director defendants only. While the settlement with the directors and officers in late 2011 resolved those claims, all the Plaintiffs continued to share an interest in proving the allegations relating to Lehman's financial condition, including its use of Repo 105 and Repo 108 accounting transactions. Accordingly, Lead Plaintiffs and the Structured Products Plaintiffs focused their discovery efforts on proving their respective claims against Ernst & Young and UBS, but coordinated their efforts with regard to areas of common interest.

Class Counsel Girard Gibbs ultimately served three sets of document requests on UBS, as well as two sets of interrogatories and one set of requests for admission, and hosted and reviewed the 1.8 million pages of documents UBS produced in response to the requests for production. Girard Gibbs conducted non-party discovery relevant to the structured product claims, including subpoenaing UBS AG (UBS's parent company) and its affiliates, and reviewing the nearly 2 million pages of documents they produced. Girard Gibbs also coordinated the targeted review of a substantial portion of the 4.4 million pages of documents produced from the Lehman estate and documents produced by other non-parties.

Girard Gibbs took eleven depositions of UBS witnesses, including the head of UBS's Structured Products department, a national sales director, four of its sales representatives, and its two experts. Girard Gibbs and other counsel that represent the Structured Products Plaintiffs have also taken and attended the depositions of 26 Lehman and Ernst & Young witnesses.

For its part, UBS took the depositions of seventeen Structured Products Class Representatives and several related individuals. In response to UBS's discovery requests, the class representatives produced several thousands of pages of documents. The depositions were completed without motion practice and there were no serious questions raised about the

Plaintiffs' preservation or production of responsive documents.

### E. *NECA-IBEW* and Plaintiffs' Motion for Reconsideration

On September 6, 2012, the Second Circuit issued *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, in which it held that "a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." 693 F.3d 145, 162 (2d Cir. 2012). Following this ruling, Plaintiffs moved for reconsideration of the Court's dismissal of claims based on offerings the Plaintiffs did not purchase, arguing that the claims were all based on the same set of concerns. ECF No. 1010. UBS opposed, arguing in part that the Court should defer ruling on Plaintiffs' motion until the Supreme Court ruled on Goldman Sachs's petition for writ of certiorari. ECF No. 1014. The Court denied the motion "without prejudice to renewal after the Supreme Court acts on the petition for writ of certiorari in [*NECA-IBEW*], and if the writ is granted, decides the case." ECF No. 1054.

### F. Class Certification

While discovery was underway, the *Equity/Debt* plaintiffs filed class certification motions in February 2012. Although all plaintiffs continued to share a common interest in establishing the underlying allegations relating to Lehman's financial condition, there was limited overlap by that time between the proposed class in the Lehman equity/debt case (which asserted claims against Ernst & Young under the 1934 Act for the time period July 2008 to September 2008), and the structured products class (which asserted claims against UBS only under the Securities Act for the time period March 2007 through June 2008). As a result, the two groups of plaintiffs filed separate class certification motions. ECF Nos. 686-692.

UBS opposed the Structured Products Plaintiffs' motion, filing more than 1,700 pages of briefing and exhibits, including two expert reports. ECF Nos. 848-852, 854-863. Plaintiffs replied and filed a rebuttal expert report. *See* ECF No. 911-914. Expert depositions took place and UBS filed a sur-reply.

On January 23, 2013, the Court granted the Structured Products Plaintiffs' motion for class certification. ECF No. 1129. The Court certified the Lehman-based claims under sections 11 and 12(a)(2), rejecting UBS's argument that individual issues of investor knowledge predominated over common issues. The Court also certified Plaintiffs' principal protection claims under section 11, found that a class action was superior to thousands of individual FINRA arbitrations, and concluded that "[t]here are no apparent difficulties in the management of this case beyond those that attend any large securities class action." *Id.* The Court appointed the Structured Products Class Representatives and Girard Gibbs as Class Counsel for the certified class. *Id.*

## G.      UBS's Rule 23(f) Petition

UBS filed a Rule 23(f) petition seeking review of the Court's class certification ruling. UBS argued that this Court had abused its discretion in granting class certification because individual issues of investor knowledge predominated over common issues. Plaintiffs opposed and on April 16 the Second Circuit denied the petition. ECF No. 1180.

## H.      Plaintiffs Renew Their Motion for Reconsideration

On March 18, 2013, the Supreme Court denied Goldman Sachs's petition for writ of certiorari. *Goldman Sachs & Co. v. NECA-IBEW Health & Welfare Fund*, No. 12-528, 2013 WL 1091772 (U.S. Mar. 18, 2013). Plaintiffs then filed a renewed motion for reconsideration under Rule 54(b), requesting that the Court amend the class certification order to include all 84 offerings under Rule 23(c)(1)(C). ECF No. 1184. Among other things, Plaintiffs pointed out

that in its January 2013 class certification order, the Court found one of the proposed class representatives to be inadequate but held that under *NECA-IBEW* the other representatives could adequately represent the investors in the two notes he purchased because "Lehman issued them off of the same registration statement" and because of "the substantial similarity in alleged misrepresentations across the class period." ECF No. 1129 at 3 n.6. UBS opposed the renewed motion. ECF Nos. 1215-1217. The parties reached an agreement in principle to resolve the case before the briefing was completed.

## I. Settlement Negotiations

The settlement was reached with the assistance of a highly qualified mediator after nearly five years of litigation. The parties explored the possibility of an early settlement before and after the Court's ruling on the motions to dismiss and again before the Court's ruling on class certification, but these negotiations were unsuccessful given the parties' divergent views as to the merits of the case and the likely outcome of the motions. Girard Decl., ¶¶ 30-31.

The parties participated in two mediation sessions before the Honorable Daniel Weinstein (Ret.), the first in December 2012 and the second in late May 2013. *Id.* at ¶¶ 32-34. Before each session, the parties exchanged detailed mediation statements and additional materials setting forth their respective positions on class certification, liability and damages. At the time of the May 2013 mediation session, the parties had the benefit of the Court's class certification order and the Second Circuit's ruling on UBS's Rule 23(f) petition, as well as the Supreme Court's denial of the writ petition in *NECA-IBEW*. *Id.* While the parties were unable to resolve the matter during the May mediation session, both sides continued negotiations with Judge Weinstein's assistance. In early June, the parties accepted a mediator's proposal to settle for $120 million, and proceeded to negotiate the specific terms of the settlement set forth in the Stipulation of Settlement and its exhibits. *Id.* at ¶ 34.

### III. Notice of Class Certification and Settlement

Plaintiffs provided the class with notice of both the provisional certification of the settlement class and the proposed settlement, as required by Rule 23. *See* Fed. R. Civ. P. 23(c)(2)(B) & (e)(1). The notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted). Rule 23(c)(2) says that the notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

In addition, the PSLRA requires that the notice state the amount of the settlement to be distributed to class members, in both the aggregate and an approximate amount per dollar invested, and the amount of attorneys' fees and expenses that Plaintiffs' Counsel[3] will seek, in both the aggregate and an approximate amount per dollar invested. 15 U.S.C. § 78u-4 (a)(7).

The notice satisfied all of these requirements. The text of the final notice distributed to class members was identical to the version attached to the Court's September 16 Order Concerning Proposed Settlement With UBS Financial Services, Inc. (ECF No. 1291). Only minor formatting changes were made. In addition, the class was provided with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). On October 7, A.B. Data

---

[3] The terms "Structured Products Plaintiffs' Counsel" and "Plaintiffs' Counsel" refer to Class Counsel Girard Gibbs, the other firms that represent the Structured Products Plaintiffs, and Lead Counsel.

mailed more than 19,000 notices to investors in the structured products whose names and

addresses were provided by UBS.  Girard Decl., Ex. 6 (Verkhovskaya Declaration), ¶ 8.  In

addition, the summary notice approved by the Court was published in the national edition of The

Wall Street Journal and in Investor's Business Daily on October 22, 2013.  *Id.*, ¶ 15, Exs. C & D.

So far, A.B. Data has received nearly 800 completed claim forms.  *Id.*, ¶ 16.

A.B. Data also maintains a website, [www.LehmanSPSettlement.com](www.LehmanSPSettlement.com), which provides all

the critical dates, the notice, the claim form, the stipulation of settlement, the complaint and the

Court's September 16 order.  *Id.*, ¶ 13.  The website also includes a toll-free number for A.B.

Data in case class members have questions.  *Id.*, ¶ 11.  To date, the settlement website has

received more than 2,200 visits, and A.B. Data has received more than 350 telephone calls and

emails about the settlement.  *Id.*, ¶ 12.

## IV.     Final Certification of the Settlement Class

On January 23, 2013, the Court certified a class of investors in 31 of the Lehman

structured product offerings.  ECF No. 1129.  Plaintiffs now request that the Court grant final

certification of a settlement class that consists of investors in all 84 of the Lehman structured

product offerings that UBS sold.  The Second Circuit has long recognized the propriety of

certifying a class solely for the purposes of a class action settlement.  *See Weinberger v.

Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Co., Inc. Securities Litig.*,

No. 04 civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009); *see also In re Giant

Interactive Group, Inc. Securities Litig.,* 279 F.R.D. 151, 158 (S.D.N.Y. 2011) ("Certification of

a settlement class 'has been recognized throughout the country as the best, most practical way to

effectuate settlements involving large numbers of claims by relatively small claimants.'")

(citation omitted).

## A.     Numerosity

The Court previously found that the class of investors in 31 offerings satisfied the numerosity requirement.  ECF No. 1129 at 8.  The proposed settlement class is even larger, consisting of approximately 19,000 investors in 84 offerings.  Since the Second Circuit has said that a class of forty members is generally considered to be sufficiently numerous, the numerosity requirement is satisfied.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

## B.     Commonality

 "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 2370 n.13 (1982).  This requires a showing that the class members "have suffered the same injury" involving a "common contention" that, in determining "its truth or falsity[,] will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

One of the common contentions is that the offering documents contained misstatements and omissions of material fact, found specifically in the twelve Lehman SEC filings and the pricing supplements' statements about principal protection.  *See Public Employees' Retirement System of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) ("[C]ourts in

this Circuit have held that the Rule 23 commonality requirement is 'plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, [as the] existence and materiality of such misrepresentations obviously present important common issues.'" (citation omitted)).  Another common contention is whether the misstatements and omissions were material to a reasonable investor.  *Id.* at 114 ("Because materiality is determined by an objective rather than a subjective standard, the question of materiality, 'rather than being an individual issue, is in fact a common issue.'" (citation omitted)).

## C. Typicality

The Second Circuit has said that typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001).  The Court previously found that the class representatives were typical of the class of investors in 31 of the offerings.  ECF No. 1129 at 8.  Their claims are also typical of the claims of investors in the additional 53 offerings because they are based on the same course of events: UBS's sale of the Lehman structured products pursuant to offering documents containing false and misleading statements about Lehman's financial condition and the principal protection feature of the notes.

## D. Adequacy

The adequacy requirement focuses on the adequacy of representation.  "To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members."  *Charron v. Wiener*, Nos. 12–2834–CV L, 12–2907–CV (CON), 2013 WL 5420976,

at *6 (2d Cir. Sept. 30, 2013). The Court already found that the seventeen class representatives will serve as adequate representatives of the narrower class of investors in the 31 offerings the Court previously certified. ECF No. 1129 at 3-4. They will also adequately represent the interests of the broader class of investors in all 84 offerings because they have standing to do so under *NECA-IBEW* and have no conflicts with the class members.

In *NECA-IBEW*, the Second Circuit held that "a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." 693 F.3d at 162. The court added that "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement." *Id.* As this Court has already recognized, the offering documents contain substantially similar (and mostly identical) misstatements and omissions about Lehman's financial condition and the principal protection feature of the notes. *See* ECF No. 1129 at 3 & n.6.

The chart attached as Exhibit 3 to the Girard Declaration shows that the misstatements and omissions about Lehman were made in twelve of Lehman's SEC filings, one or more of which were incorporated into the offering documents for each of the 84 offerings. Under *NECA-IBEW*, a plaintiff whose offering documents incorporated Lehman's 10-Q for the third quarter of 2007 has class standing to represent investors in other offerings with offering documents that incorporated the same 10-Q, because they were injured by identical misstatements and omissions. 693 F.3d at 163 ("Sections 11 and 12(a)(2) claims brought by a purchaser of debt from" one of "a series of corporate debt offerings, issued over the course of a year, all of which

contained an identical misrepresentation about the issuing company's impending insolvency …

would raise a 'set of concerns' nearly identical to that of a purchaser from another offering").

The statements about principal protection in the offering documents are similarly uniform, since

they can be divided into four categories based on their relevant statements. *See* Girard Decl., Ex.

4.[4]

The Court must also consider whether class counsel is "'qualified, experienced, and

generally able' to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d

285, 291 (2d Cir. 1991) (citation omitted). Class Counsel Girard Gibbs is experienced in

litigating securities class actions. The firm's experience is described in Exhibit 9 to the Girard

Declaration. Girard Gibbs has also devoted substantial time and resources to litigating class

members' claims against UBS, and will continue to devote the resources necessary to ensure that

the settlement fund is properly distributed to class members. *See* Girard Decl., Ex. 9 and ¶ 57.

### E.      Predominance

The predominance requirement "tests whether a proposed class is 'sufficiently cohesive

to warrant adjudication by representation.'" *In re Salomon Analyst Metromedia Litig.*, 544 F.3d

474, 480 (2d Cir. 2008) (citation omitted). "Class-wide issues predominate if resolution of some

of the legal or factual questions that qualify each class member's case as a genuine controversy

can be achieved through generalized proof, and if these particular issues are more substantial

---

[4] Investors in the two March 30, 2007 offerings are properly included in the settlement class.
The Court dismissed claims based on the offerings as barred by the statute of repose, but when
class representative Stephen Gott filed his complaint on behalf of "a Class consisting of all
persons or entities who, between May 30, 2006 and September 15, 2008 inclusive, purchased
Lehman Principal Protection Notes, and who were damaged thereby" on November 6, 2008, the
statute of repose had not run. Since, under *NECA-IBEW*, Mr. Gott had class standing to pursue
claims on behalf of investors of all of the principal protection offerings, the statute of repose
does not bar claims based on the two March 30, 2007 offerings.

than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002). As the Supreme Court has observed, the requirement of predominance is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S. Ct. 2231, 2250 (1997).

In its class certification order, the Court noted "the substantial similarity in alleged misrepresentations across the class period." ECF No. 1129 at 3, 7. This finding applies equally to all 84 offerings because they are interspersed with the 31 offerings the Court previously certified. *See* Girard Decl., Ex. 4. This Court has previously recognized that "[c]ourts in this and other districts have found that such substantial similarity of the allegedly misleading statements in Offering Documents is sufficient for class certification, even where class members purchased different offerings at different times." *In re IndyMac Mortgage-Backed Securities Litig.*, 286 F.R.D. 226, 241 (S.D.N.Y. 2012). In addition, materiality is a common issue because it is based on an objective standard. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318 (2011); *Merrill Lynch,* 277 F.R.D. at 114. Plaintiffs' damages can be calculated according to a common formula, *see* 15 U.S.C. §§ 77k(e), 77*l*(a), and two of UBS's key defenses—due diligence and causation—are also common to all class members. *See In re In re WorldCom, Inc. Securities Litig.*, 219 F.R.D. 267, 288, 293 n.30 (S.D.N.Y. 2003).

Not all issues have to be common for the predominance requirement to be satisfied. *See Merrill Lynch*, 277 F.R.D. at 111 ("[I]ndividual issues will likely arise in this case as in all class action cases," and to allow "various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." (citation omitted)). In opposing class certification, UBS argued that individual

inquiries were necessary to establish its knowledge defense.  But the Court rejected that

argument as to Plaintiffs' Lehman-based allegations, and held that it also did not preclude

certification of Plaintiffs' principal protection allegations under section 11.  ECF No. 1129 at 4-

7.  Because a "sufficient constellation of common issues binds class members together," the

predominance requirement is satisfied.  *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010).

### F.      Superiority

To satisfy the superiority requirement, the class action must be superior to other methods

of adjudication.  Fed. R. Civ. P. 23(b)(3).  Rule 23 sets forth several factors for courts to

consider: (1) the class members' interests in individually controlling the prosecution of their own

actions against the defendant; (2) the extent and nature of any pending litigation by class

members regarding the controversy; (3) the desirability of concentrating the litigation in the

forum; and (4) the likely difficulties in managing a class action.  *Id.*  Courts do not consider the

fourth factor, manageability, when the class is being certified solely for the purpose of

settlement.  *Amchem*, 521 U.S. at 620, 117 S. Ct. at 2248.

Certification of the settlement class is superior to any alternatives.  Some class members

have already commenced arbitrations against UBS, but those individuals, and any others who

wish to pursue arbitration, may opt out of the class settlement.  In its class certification ruling,

the Court held that class members are "entitled to the benefits of class treatment" and that

individual FINRA arbitrations were not superior to a class action.  ECF No. 1129 at 7-8.  The

same is true for the vast majority of class members who have not commenced individual

arbitration.  They should be allowed to participate in this settlement.  *See Marsh & McLennan*,

2009 WL 5178546, at *12  (recognizing that the "class action is uniquely suited to resolving

securities claims" because "the prohibitive cost of instituting individual actions" gives class

members "limited interest in individually controlling the prosecution or defense of separate actions").

## V.      Final Approval of the Settlement

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart,* 396 F.3d at 116 (quoting *Joel A. v. Giuliani,* 218 F.3d 132,138 (2d Cir. 2000)).  Courts must scrutinize "both the settlement's terms and the negotiating process leading to settlement."  *Id.* (citing *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)).  In evaluating the procedural and substantive fairness of the settlement, courts must keep in mind the "strong judicial policy in favor of settlements, particularly in the class action context."  *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

### A.      The Settlement Is Procedurally Fair

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart,* 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).  This settlement is presumptively fair because it is the product of arm's-length negotiations conducted with the assistance of the Honorable Daniel Weinstein (Ret.).  *See, e.g., In re Flag Telecom Holdings, Ltd. Securities Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein."); *In re Telik, Inc. Securities Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conduct at arm's-length and without collusion.").  The final settlement amount of $120 million was proposed by the mediator and accepted by both parties.

*See In re Citigroup Inc. Securities Litig.*, No. 09 MD 2070 (SHS), 2013 WL 3942951, at *8

(S.D.N.Y. Aug. 1, 2013) ("[T]he history of the negotiations and the role of the mediator suggest

that the parties actually dealt with one another at arm's length—going so far as accepting the

mediator's proposed dollar amount.").

The settlement was also reached after most written and document discovery and

numerous depositions were completed, providing Plaintiffs' Counsel with a good sense of the

strengths and weaknesses of the case. Counsel for both parties are experienced in litigating

securities class actions and able to evaluate the merits of the claims and defenses, as well as the

merits of the settlement they ultimately reached.

## B.       The Settlement is Substantively Fair

The Second Circuit has identified nine factors for district courts to consider in

determining whether a class action settlement is substantively fair:

> (1) the complexity, expense and likely duration of the litigation, (2) the
> reaction of the class to the settlement, (3) the stage of the proceedings and
> the amount of discovery completed, (4) the risks of establishing liability,
> (5) the risks of establishing damages, (6) the risks of maintaining the class
> action through the trial, (7) the ability of the defendants to withstand a
> greater judgment, (8) the range of reasonableness of the settlement fund in
> light of the best possible recovery, (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant risks of
> litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*

*by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Wal-Mart*, 396

F.3d at 117. The *Grinnell* court instructed that a court applying these factors "must eschew any

rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop

short of the detailed and thorough investigation it would undertake if it were actually trying the

case." 495 F.2d at 462. Application of these factors weighs in favor of approving the settlement.

## 1. The Complexity, Expense and Likely Duration of the Litigation

"[W]here a settlement results in 'substantial and tangible present recovery, without the attendant risk and delay of trial,' the first factor weighs in favor of settlement." *Charron v. Pinnacle Group N.Y., LLC*, 874 F. Supp. 2d 179, 196 (S.D.N.Y. June 6, 2012) (quoting *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)). The $120 million settlement fund is a "substantial and tangible present recovery" and resolving the case now avoids the delay and cost of completing fact discovery, expert discovery, summary judgment motions, trial, and post-trial motions and appeal, which could take many years. *In re Citigroup*, 2013 WL 3942951, at *9 ("After the completion of fact discovery, the parties would undoubtedly pursue expert discovery, summary judgment motions, and pretrial motions prior to trial. A trial would then consume substantial resources, and its result would be appealable. In sum, the expense and duration of continued litigation weighs in favor of approving the settlement."); *see also Maley v. Del Global Technologies Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Delay not just at the trial stage, but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value.")

There is also significant risk in continuing to litigate. Plaintiffs are confident in the merits of their claims, but the outcome of a jury trial is never certain. In particular, courts have observed that in securities class actions the determination of damages "is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *In re Global Crossing Securities & ERISA Litig.,* 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (citation omitted); *see also In re Flag Telecom*, 2010 WL 4537550, at *18 ("The jury's verdict with respect to damages would

thus depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."); *In re Bear Stearns Co., Inc. Securities, Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 268 (S.D.N.Y. 2012) (when damages are subject to a "battle of the experts," there is "the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses" (citation omitted)).

Resolving this case now, for an amount that is among the ten highest settlements ever recovered by non-institutional plaintiffs and that will pay class members at least 15.5% of their losses, is a far more beneficial to class members than assuming the uncertainty and delay of continuing to litigate. *See Hicks v. Stanley,* No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 19, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *see also In re Citigroup*, 2013 WL 3942951, at *9 ("As a general matter, the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." (quoting *McBean v. City of New York,* 233 F.R.D. 377, 385 (S.D.N.Y. 2006))). This factor supports approval of the settlement.

### 2.     The Reaction of the Class to the Settlement

Courts have said that the reaction of the class to the settlement is the most significant factor to be considered in determining the fairness of the settlement. *See Grinnell*, 495 F.2d at 462 (observing that a positive response from the class is "strong evidence" of the fairness of a settlement). The class representatives support the settlement. Girard Decl., ¶ 44 & Exs. 5-A – 5-E. The November 19 deadline for class members to file objections or to request exclusion from the class has not yet passed. But as of November 4, of the nearly 20,000 notices sent to

class members to date, two objections (to the fee request only) and nine requests for exclusion have been received.  Girard Decl., ¶ 49 & Ex. 6 at ¶ 16.  Plaintiffs will file reply papers on December 3, 2013 and will at that time address all objections and exclusions submitted by the November 19 deadline.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed

This factor considers whether "plaintiffs entered into settlement only after a thorough understanding of their case."  *Wal-Mart*, 396 F.3d at 118; *see also Maley*, 186 F. Supp. 2d at 364 (considering whether counsel could evaluate "the merits of Plaintiff's claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement").  The close of fact discovery was fast approaching when the parties reached this settlement.  Plaintiffs had reviewed millions of pages of documents produced by UBS, the Lehman estate, and third parties.  All of the Plaintiffs have been deposed, and Plaintiffs deposed dozens of UBS, Lehman and Ernst & Young witnesses.  Plaintiffs therefore had a solid understanding of their case and the challenges they faced as they prepared for summary judgment motions and trial.  This factor supports approval of the settlement.

### 4.     The Risks of Establishing Liability and Damages

In weighing this factor, courts do not have to "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Global Crossing*, 225 F.R.D. at 459.  If the parties continued to litigate, Plaintiffs would have to prove that the alleged misstatements and omissions were misleading and material to a reasonable investor.  While the report produced by Lehman Bankruptcy Examiner Anton Valukas was helpful in overcoming the defendants' motions to dismiss and the evidence he compiled would certainly be useful at trial, Plaintiffs'

claims do not turn solely on the facts the Examiner uncovered.  And UBS and the other defendants maintained that the Examiner's evidence and conclusions supports their position that the offering documents did not contain materially misleading statements or omissions.  *See, e.g.,* ECF No. 294 at 1.  The Court also expressed some skepticism about Plaintiffs' "principal protection" allegations in its motion to dismiss order.  ECF No. 439 at 97.

Plaintiffs would have to overcome UBS's defenses as well, including its due diligence and negative causation defenses.  As discussed above, proving entitlement to damages in securities class actions can be challenging, because it usually devolves into a "battle of the experts."  *In re Bear Stearns*, 909 F. Supp. 2d at 268.  The risk and uncertainty involved in a jury trial favor approval of this settlement.   "Indeed, '[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.'"  *In re Citigroup*, 2013 WL 3942951, at *10 (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

### 5.         The Risks of Maintaining the Class Action Through Trial

Because courts can revisit the propriety of class certification at any stage of the litigation, there is always a risk of decertification.  *See, e.g., Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 200 (S.D.N.Y. 2012) ("It is well-settled in the Second Circuit that, in approving a class settlement, a court must take into consideration the specter of class decertification."), *aff'd sub nom Charron v. Wiener*, 2013 WL 5420976 (2d Cir. Sept. 30, 2013).  UBS vigorously opposed Plaintiffs' motion for class certification, submitting more than 1,700 pages of briefing and exhibits, and could have been expected to seek decertification.  This factor also supports approval of the settlement.

### 6.         The Ability of Defendants to Withstand a Greater Settlement

Although UBS had the economic capacity to pay more, this factor is generally not

determinative when other factors weigh in favor of approval. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (finding no abuse of discretion in the district court's finding that "the defendants' ability to withstand a higher judgment weighed against the settlement," but that "this factor, standing alone, does not suggest that the settlement is unfair"). A defendant "is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.,* No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) (quoting *McBean,* 233 F.R.D. at 388).

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

This factor requires courts to "compare the terms of the compromise with the likely rewards of litigation." *Weinberger*, 698 F.2d at 73 (citation omitted). This analysis "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) aff'd sub nom. *In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997) (citation omitted). The "range of reasonableness" for a settlement "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart,* 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re Giant,* 279 F.R.D. at 162 ("The adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'") (citation omitted).

The settlement will result in an average recovery for all class members of $134 for each note with a face value of $1,000, before deducting attorneys' fees, expenses and costs. If every class member files a claim, the recovery equals 15.5% of the maximum estimated recovery at

trial (not taking into account the impact of any of UBS's defenses or rights of offset). The recovery represents over a third of the class's estimated recoverable damages at trial assuming Plaintiffs prevail and the jury attributes 50% of the fault for the losses to Lehman's officers and directors.

Cases asserting only Securities Act claims tend to settle for larger amounts than those asserting Exchange Act claims, but the median settlement as a percentage of damages was still only 7.5% from 1996 through December 2012. Cornerstone Report at 11. Cornerstone Research has reported that in 2012 the median settlement of securities class actions as a percentage of estimated damages was 1.8%. Cornerstone Report at 8; *see also* Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller, and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review 33 (NERA Economic Consulting Jan. 29, 2013) ("NERA Report") (reporting a median ratio of 1.8% of investor losses). This median was lower than prior years, in part because credit-crisis cases and mega-settlements (defined as settlements over $100 million) resulted in a smaller proportion of estimated damages. Cornerstone Report at 8. For cases with estimated damages of $500 million to $999 million, the median settlement was 1.1% of estimated damages in 2012. *Id.* NERA reports that for settlements between 1996 and December 2012, the median settlement value as a percentage of investor losses ranging from $600 million to $999 million was 1.6%. NERA Report at 32.

Courts routinely approve securities class action settlements that recover far less for class members. *See, e.g., In re China Sunenergy Securities Litig., Inc.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade … have ranged from 3% to 7% of the class members' estimated losses); *In re Initial Public Offering*

*Securities Litig.,* 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving a settlement that paid

class members 2% of their estimated maximum recovery); *Hall v. Children's Place Retail*

*Stores, Inc.*, 669 F. Supp. 2d 399, 402 (S.D.N.Y. 2009) (approving a settlement that paid class

members 5% to 12% of their estimated maximum recovery); *In re Merrill Lynch & Co., Inc.*

*Research Reports Securities Litig.,* No. 02 Civ. 5097(JFK), 2007 WL 4526593, at *11 (S.D.N.Y.

Dec. 20, 2007) (approving settlement that paid class members 2.15% to 4.07% of their estimated

maximum recovery); *In re Nortel Networks Securities Litig.*, No. 01 CIV. 1855 (RMB), 2006

WL 3802198, at *6 (S.D.N.Y. Dec. 26, 2006) (approving a settlement that paid class members

10% of their estimated maximum recovery).  Thus, this factor also weighs in favor of approving

the settlement.

## VI.     Final Approval of the Plan of Allocation

A plan of allocation "must also meet the standards by which the settlement was

scrutinized—namely, it must be fair and adequate."  *In re WorldCom, Inc. Securities Litig.*, 388

F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367).  "As a general

rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of

the merits of all claims, and whether the proposed apportionment is fair and reasonable in light

of that information."  *In re Citigroup*, 2013 WL 3942951, at *13 (quoting *In re* PaineWebber,

171 F.R.D. at 133).  "'When formulated by competent and experienced counsel,' a plan for

allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *In re Telik,*

576 F. Supp. 2d at 580 (quoting *In re Global Crossing,* 225 F.R.D. at 462).  The plan may

allocate funds to class members based on the extent of their injuries or strength of their claims.

*See id.* ("A reasonable plan may consider the relative strength and values of different categories

of claims.").

Plaintiffs prepared the plan of allocation in consultation with Forensic Economics, Inc., a financial and economic consulting firm that was already familiar with the factual and legal issues in the litigation based on its work on the previous settlements and damages analyses. The plan of allocation provides for payment to each class member who submits a valid claim form their pro rata share of the net settlement fund, which is the $120 million total settlement fund less taxes, notice and administration costs, and attorneys' fees and expenses. The plan distinguishes between investors who sold their notes before Lehman declared bankruptcy on September 15, 2008 (and who therefore do not have a recognized loss), those who purchased before the bankruptcy but sold before October 31, 2008 (the date the first structured products class action was filed), those who purchased before the bankruptcy and sold after October 31, 2008, those who bought before the bankruptcy and still hold their notes, and those who bought notes after the bankruptcy (and thus have no recognized loss). Each claimant's losses and gains will be calculated according to the applicable category, resulting in a recognized claim amount. Claimants will then receive their pro rata share of the net settlement fund based on their recognized claim amount. This plan of allocation is reasonable because it provides for pro rata distribution of the net settlement fund among class members by reference to the provisions for the calculation of damages under the Securities Act.

## VII.    Conclusion

For all the reasons discussed above, Plaintiffs' motion for final certification of the settlement class and final approval of the settlement and plan of allocation should be granted.

Dated: November 5, 2013

Respectfully submitted,

**GIRARD GIBBS LLP**

/s/ *Daniel C. Girard*

Daniel C. Girard
Jonathan K. Levine
Amanda M. Steiner
Dena C. Sharp
601 California Street, Floor 14
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dcg@girardgibbs.com
jkl@girardgibbs.com
as@girardgibbs.com
chc@girardgibbs.com

John A. Kehoe
711 Third Avenue, 20th Floor
New York, NY 10017
Tel: (212) 867-1721
Fax: (212) 867-1767
jak@girardgibbs.com

*Class Counsel and Counsel for Plaintiffs*
*Mohan Ananda, Richard Barrett, Neel*
*Duncan, Nick Fotinos, Stephen Gott, Karim*
*Kano, Barbara Moskowitz, Ronald Profili,*
*Joe Rottman, Grace Wang and Miriam Wolf*

ZWERLING, SCHACHTER
     & ZWERLING, LLP
Susan Salvetti
Justin M. Tarshis
41 Madison Avenue
New York, New York 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969
ssalvetti@zsz.com
jtarshis@zsz.com

*Counsel for Plaintiffs Ed Davis, Rick*
*Fleischman, Gastroenterology Associates,*
*Ltd. Profit Sharing Plan FBO Charles M.*

*Brooks M.D., Arthur Simons, and Juan
Tolosa*

LAW OFFICES OF JAMES V. BASHIAN,
P.C.
James V. Bashian
500 Fifth Avenue, Suite 2700
New York, New York 10110
Telephone: (212) 921-4110
Facsimile: (212) 921-4229

*Counsel for Plaintiff David Kotz*

BONNETT FAIRBOURN FRIEDMAN
   & BALINT, P.C.
Andrew Friedman
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100
Facsimile: (602) 274 1199

TIFFANY & BOSCO P.A.
Richard G. Himelrick
2525 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

*Counsel for Plaintiff Shea-Edwards Limited
Partnership*