UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION<br><br>This Document Applies To:<br><br>*In re Lehman Brothers Equity/Debt Securities Litigation*, 08-CV-5523 (LAK) | Case No. 09-MD-2017 (LAK)<br><br>ECF CASE |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION,
AND LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES, IN CONNECTION WITH
<u>PROPOSED SETTLEMENT WITH DEFENDANT ERNST & YOUNG LLP</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................. iii

I. INTRODUCTION ........................................................................................................1

II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........................2

III. EXCLUSION OF CERTAIN SECURITIES FROM THE SETTLEMENT ...................6

IV. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
ADEQUATE .................................................................................................................7

V. THE REQUESTED FEE IS FAIR AND REASONABLE .............................................9

VI. CONCLUSION ...........................................................................................................10

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................5

*In re Bear Stearns Cos., Sec. Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................................9

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d. 369 (S.D.N.Y. 2013) .......................................................................................7

*In re Excess Value Ins. Coverage Litig.*,
  Nos. M-21-84RMB, MDL-1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) .......................5

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................5, 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y Dec. 20, 2007) ..................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ................................................................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  MDL No. 1005, M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) .........................7

*Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .........................................................................................................5

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1983) .........................................................................................................5

**STATUTES AND RULES**

15 U.S.C. 78u-4(a)(7) ........................................................................................................................5

Fed. R. Civ. Proc. Rule 23(e) ............................................................................................................5

Fed. R. Civ. Proc. Rule 26(a)(2)(B) ..................................................................................................2

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | DEFINED TERM |
|---|---|
| "Authorized Claimants" | A Settlement Class Member who either: (i) previously submitted a valid Proof of Claim Form to the Claims Administrator in connection with the D&O Settlement or UW Settlements; or (ii) submits a timely and valid Proof of Claim Form to the Claims Administrator in connection with the EY Settlement, in accordance with the requirements established by the District Court, and who is approved for payment from the Net Settlement Fund |
| "Complaint" or "TAC" | The Third Amended Class Action Complaint filed with the Court on April 23, 2010 (ECF No. 212) |
| "D&O Settlement" | The $90 million dollar settlement with the D&O Defendants in this Action approved by order of the Court dated May 24, 2012 (ECF No. 414) |
| "DOJ" | U.S. Department of Justice |
| "EY" or "E&Y" | Defendant Ernst & Young LLP |
| "Examiner" | Anton R. Valukas, Esq., the court-appointed examiner in Lehman's Chapter 11 bankruptcy proceedings, *In re Lehman Brothers Holdings Inc.*, 08-13555 (JMP) (Bankr. S.D.N.Y.) |
| "Examiner's Report" | Report of Anton R. Valukas, Examiner, dated March 11, 2010 |
| "Fee and Expense Application" | Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses on behalf of all Plaintiffs' Counsel |
| "Fee Memorandum" | The Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses in Connection with the EY Settlement (ECF No. 550) |
| "GCG" | The Garden City Group, Inc., the Court-approved claims administrator for the Settlement |
| "Individual Action Plaintiffs" | Plaintiffs named in the Individual Actions who did not request removal from the excluded list in accordance with the Stipulation and the Notice |
| "Joint Declaration" or "Joint Decl." | Joint Declaration of David Stickney and David Kessler in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant EY and Approval of Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 551) |
| "Lead Counsel" | Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP |

| ABBREVIATION | DEFINED TERM |
|---|---|
| "Lead Plaintiffs" | Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local Governmental Officers' Superannuation Committee, The City of Edinburgh Council as Administering Authority of the Lothian Pension Fund, and Operating Engineers Local 3 Trust Fund |
| "Lehman" or "Lehman Brothers" or "Lehman Estate" | Lehman Brothers Holdings Inc. |
| "Litigation Expenses" | The costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the action, for which Lead Counsel applied to the Court for reimbursement from the Settlement Fund |
| "Notice" | Notice of Pendency of Class Action and Proposed Settlement with Defendant Ernst & Young LLP, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses |
| "Notice Order" | Order Concerning Proposed Settlement With Defendant Ernst & Young LLP filed December 3, 2013 (ECF No. 542) |
| "Notice Packet" | The Notice, Claim Form and a cover letter, sent to potential members of the Settlement Class |
| "Plaintiffs" or "Settlement Class Representatives" | Lead Plaintiffs and Oklahoma Firefighters Pension and Retirement System |
| "Plaintiffs' Counsel" | Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, represent any Plaintiffs in the Action, including the following: Grant & Eisenhofer P.A.; Kirby McInerney LLP; Labaton Sucharow LLP; Law Offices of Bernard M. Gross, P.C.; Murray Frank LLP; Saxena White P.A.; and Spector Roseman Kodroff & Willis, P.C. |
| "PSLRA" | The Private Securities Litigation Reform Act of 1995 |
| "Repo 105" | A repurchase agreement (*i.e.*, a "repo") that Lehman accounted for as a sale instead of a financing, which removed the assets from Lehman's balance sheet.  In a second step, Lehman used the cash obtained in exchange for the assets to pay down other liabilities.  The Repo 105 transactions reduced the size of Lehman's balance sheet and reduced its net leverage ratio.  The transactions were called Repo 105 because Lehman provided 5% overcollateralization.  Repo 105 and Repo 108 are referred to collectively as "Repo 105" |
| "SEC" | U.S. Securities and Exchange Commission |
| "Settlement Amount" | $99 million in cash |
| "Settlement Class" or "Settlement Class Members" | All investors who (a) purchased or otherwise acquired Lehman Securities identified in Appendix A to the |

| ABBREVIATION | DEFINED TERM |
|---|---|
| | Stipulation, (b) purchased or otherwise acquired Lehman Structured Notes identified in Appendix B to the Stipulation, and/or (c) purchased or otherwise acquired Lehman common stock or call options and/or sold Lehman put options, during the Settlement Class Period (*i.e.*, the period between June 12, 2007 and September 15, 2008, through and inclusive). Excluded from the Settlement Class are (i) the named defendants in the Complaint, (ii) Lehman, (iii) the executive officers and directors of each Defendant or Lehman, (iv) any entity in which any Defendant or Lehman have or had a controlling interest, (v) members of any Defendant's immediate families, (vi) the plaintiffs named in the actions listed on Appendix C to the Stipulation who did not request removal from the excluded list in accordance with Paragraph 34 of the Stipulation, (vii) any person or entity that has (a) litigation claims in any forum against EY arising out of the purchase of Lehman Securities during any portion of the Settlement Class Period and received a judgment, or (b) settled and released claims against EY arising out of the purchase of Lehman Securities during any portion of the Settlement Class Period (as identified on a confidential exhibit that will be produced by EY on a confidential basis to the Claims Administrator, but shall not be provided to Lead Counsel or Lead Plaintiffs or to any other person or entity), and (viii) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class are any persons or entities who excluded themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice |
| "Settlement Class Period" | The period between June 12, 2007 and September 15, 2008, through and inclusive |
| "Settlement Fairness Hearing" or "Final Approval Hearing" | The hearing scheduled for April 16, 2014 at 10:00 a.m. at which the Court will consider, among other things, whether the Settlement, the Plan of Allocation and Lead Counsel's Fee and Expense Application are fair, reasonable and adequate |
| "Settlement Memorandum" | The Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant Ernst & Young LLP and Approval of Plan of Allocation (ECF No. 548) |
| "SNP Settlement" | The settlement with UBSFS for $120 million related to Lehman structured notes that was approved by order of the Court on December 13, 2013 (ECF No. 544) |

v

| ABBREVIATION | DEFINED TERM |
|---|---|
| "Stipulation" | Stipulation and Agreement of Settlement between Plaintiffs and EY dated as of November 20, 2013 (ECF No. 535-1) |
| "UW Settlements" | The settlements in this Action with the UW Defendants totaling $426,218,000 approved by order of the Court on May 2, 2012 (ECF No. 397) |

I.      **INTRODUCTION**

Plaintiffs respectfully submit this Reply in further support of their Motion for Final Approval of Settlement with Defendant Ernst & Young LLP ("EY") and Approval of Plan of Allocation (ECF No. 547), and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses in Connection with the EY Settlement (ECF No. 549).

In their opening papers, Plaintiffs established that the $99 million Settlement with EY represents a favorable recovery for the Settlement Class and warrants approval. A recovery at this level was only possible after Plaintiffs developed a compelling case over the course of three and one-half years. EY, having already moved successfully to dismiss all claims against it except for a § 10(b) claim arising from a single quarterly review, asserted myriad defenses that, if successful, would have resulted in no recovery. Considering the substantial risks and results achieved, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate.

Likewise, the proposed Plan of Allocation (the "Plan") is fair and reasonable and provides an equitable basis to distribute the net settlement proceeds among Authorized Claimants. It is based on the plan that the Court approved when allocating the prior recovery from the D&O Settlement.

Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses is also fair and reasonable. The requested fee represents a significant negative multiplier on Plaintiffs' Counsel's lodestar and otherwise is supported by the *Goldberger* factors.

Since Plaintiffs submitted their opening papers, the deadline for objections and exclusion requests has passed. The paucity of objections and their lack of merit, as well as the requests of non-Settlement Class Members to participate as Settlement Class Members, further support

approval of the Settlement.[1]  There are just two objections from potential Settlement Class Members.[2]  Both objections are devoid of merit.  Mr. Andrews, who previously objected to the D&O Settlement, largely recycles his prior contentions.  Mr. Andrews believes the case against EY was a "slam dunk," "piece of cake," and "walk in the park," and that the Settlement Amount is therefore too low.  Conspicuously missing from his objection, however, is any attempt to address the risks of the case.  By contrast to Mr. Andrews' characterizations, the SEC and the DOJ decided against pursuing any claims against EY (or anyone else) reportedly because "[t]hey discovered that Repo 105 had nothing to do with Lehman's failure and was technically allowed under an obscure accounting rule."  Joint Decl. ¶8.

Mr. Andrews and Mr. Gao also object that information to support the Settlement is supposedly "missing" and "hidden."  Not so.  Disclosure of reports from expert witnesses who would testify at trial, as required by Fed. R. Civ. P. 26(a)(2)(B), is neither "hidden" information nor necessary to support the Settlement.  The additional information that Mr. Gao claims is omitted from the Notice – inflation and deflation data – is, in fact, included in the Notice.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Plaintiffs' opening papers demonstrate that the Settlement is procedurally and substantively fair and reasonable under the *Grinnell* factors.  Nothing in Mr. Andrews' lengthy

---

[1]     Seven potential members of the Settlement Class requested exclusion, *see* Supplemental Affidavit of Jose C. Fraga ("Fraga Supp. Aff." submitted herewith) ¶¶6-7, and three of the Individual Action Plaintiffs affirmatively seek to be included in the Settlement Class as permitted and contemplated by the Settlement.  *Id.* ¶¶8-9.

[2]     Objections have been received from Raymond Gao (the "Gao Obj." ECF No. 545) and Chris Andrews (the "Andrews Obj." ECF No. 554).  Only Mr. Andrews provided transaction information purporting to demonstrate that he is a Settlement Class Member.  Also, Eric Taussig ("Taussig") (ECF No. 562) and the Estate of Robert J. Kreps ("Kreps") (ECF No. 1377 in MDL), who are not Settlement Class Members, object because they would like to be a part of the Settlement Class, but the securities they purchased do not fall within the Settlement Class definition.  Lead Counsel also previously received a correspondence from William Brady disapproving of class actions generally (*see* reference in ECF No. 548 at p. 15 n.5), but Dr. Brady has since instructed Lead Counsel not to treat his correspondence as an objection.

objection provides a valid basis to disapprove the Settlement.  Stripped of its vitriol, Mr. Andrews essentially contends that:  (1) the Settlement Amount is too low; and (2) the Settlement should not be approved absent disclosure of reports from experts who would testify at trial (in the event the Settlement had not been reached).

First, Mr. Andrews claims, as he did when objecting to the D&O Settlement, that the Settlement Amount is too low because the case against EY is so strong.  *Compare* Andrews Obj. to EY Settlement (ECF No. 554) at 35 ("This is a slam dunk for the class against E&Y in establishing liability and damages right now . . . ."); *with* Andrews Obj. to D&O Settlement (ECF No. 381-6), at 10-11 ("The case for the D&O class was a slam dunk made lock, stock and delivered . . . .").  Mr. Andrews fails entirely to consider any of the substantial risks to establishing liability against an outside audit firm for a quarterly review and to proving damages, particularly when EY maintained throughout that Lehman suffered a liquidity crisis amidst a global financial meltdown that had nothing whatsoever to do with Repo 105.

Mr. Andrews apparently believes that the case arises from EY's audit opinion for Lehman's 2007 financial statement.  EY, however, successfully moved to dismiss such claims.  As previously explained, proving the existence of a materially false statement in EY's quarterly review report for 2Q08, and EY's scienter, would be substantially more difficult than for an annual audit opinion.  Mr. Andrews also does not attempt to address any of EY's defenses, such as to loss causation or to the proportionate fault of Lehman's officers, directors and others.  Rather, Mr. Andrews assumes incorrectly that EY would be responsible for the entire loss of Lehman's market capitalization through its bankruptcy.  Andrews Obj. at 20-21.  Lead Plaintiffs and Lead Counsel carefully evaluated such defenses, among other factors, when deciding to accept the Settlement.

3

Mr. Andrews also apparently believes that the analysis stops at the Examiner's Report. The Examiner's Report, however, considered only whether there may be evidence to support claims by the Lehman Estate against EY for professional negligence. It did *not* address issues that are critical to this case, namely EY's scienter or loss causation. Throughout his objection, Mr. Andrews confuses claims that a class can validly bring for federal securities violations, with his laundry list of other claims such as "professional malpractice," "gross negligence," "tortious interference," and "breach of duty."[3] Not only did the limited scope of the Examiner's Report leave open critical issues, but it neither constitutes a final determination nor is it conclusive of the facts in this case. Moreover, throughout, EY maintained that the Examiner's Report was incomplete and inaccurate in important respects.

Second, Mr. Andrews objects that the contemplated reports from experts who would have testified at trial are "missing." Andrews Obj. at 9. When the parties reached an agreement in principle in October 2013, expert reports were not yet due. There is no support for Mr. Andrews' contention that expert reports must be disclosed before settlement. Taking Mr. Andrews' argument one step further, one could argue that the parties should have exchanged and disclosed all pretrial motions, including *Daubert* motions, motions in *limine*, jury verdict forms, jury instructions, *voir dire* and draft pre-trial orders, before reaching the Settlement. As the Court is aware, however, settlement is a compromise designed to avoid further litigation.

In this instance, the stage of the litigation was far-advanced, and Plaintiffs and Lead Counsel had a firm understanding of the strengths and weaknesses of the claims and defenses.

---

[3] *See* Andrews Obj. at 16-20, 39-57, 60-64. Mr. Andrews' naivety is confirmed by his accusation that "Counsel never focused in its TAC or settlement papers on any of the non security related issues." *Id.* at 15. This is a securities class action, for violations of the federal securities laws, brought on behalf of securities purchasers; claims that could arguably have been brought derivatively or by the Lehman Estate were not, and could not have been, asserted by Plaintiffs here.

They had prosecuted the claims against EY for over three and one-half years, through EY's dismissal motion, Plaintiffs' class certification motion, extensive discovery, and lengthy settlement negotiations.[4]

Mr. Andrews' bootstrap contention – that the Notice to the Settlement Class omitted that the Settlement occurred before disclosure of expert reports – is likewise without merit. Notice to class members of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."[5] Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007). The PSLRA also provides additional information that is required to be included in a class notice. 15 U.S.C. 78u-4(a)(7). All of these requirements were satisfied in the Notice here.[6]

---

[4] *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (this requirement "is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them'") (citation omitted); *In re Excess Value Ins. Coverage Litig.*, Nos. M-21-84RMB, MDL-1339, 2004 WL 1724980, at *12 (S.D.N.Y. July 30, 2004) ("The investigation, discovery and motion practice conducted to date provide Plaintiffs with 'sufficient information to make an informed judgment on the reasonableness of the settlement proposal.'") (citation omitted); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

[5] *Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (citation omitted).

[6] Mr. Andrews' contention that the opening papers were not posted on the Settlement website until a week after they were publicly filed on March 11, 2014, is factually incorrect. Andrews Obj. at 29. The papers were posted on March 13, 2014. *See* Fraga Supp. Aff. ¶5. Likewise, Mr. Gao's contention that there are "numerous errors" in the notice packet is incorrect. Gao Obj. at 1. The single minor discrepancy identified by Mr. Gao provides no basis for rejecting the Settlement. Specifically, the heading on page 20, heading H, section 2 of the Notice was accurate – "Sale of Exchange-Traded Put Options"; however, the first sentence under the heading incorrectly read "For each sale or writing of Lehman exchange-traded **call** options (listed on Exhibit 4)." An updated Notice was promptly posted on the Settlement website to correct the minor typographical error to read "For each sale or writing of Lehman exchange-traded **put** options (listed on Exhibit 4)." Moreover, contrary to Mr. Andrews' contentions, Lead Plaintiffs are not required to submit separate declarations to support the Settlement. The Settlement Memorandum (p. 4) and the Fee Memorandum (p. 1) assert Plaintiffs' support for all aspects of the Settlement.

5

### III. EXCLUSION OF CERTAIN SECURITIES FROM THE SETTLEMENT

Two "objections" were received by individuals who wish to participate in the Settlement. *See* ECF No. 1377 in MDL, and ECF No. 562. Both Mr. Kreps and Mr. Taussig, however, are not members of the Settlement Class because the securities they purchased do not fall within the definition of the Settlement Class. Previously, the Court denied a similar request to change the definition of the settlement class for the D&O Settlement. *See* ECF Nos. 472, 473.

Lead Plaintiffs asserted claims where liability exists under the federal securities laws and for securities that they or other named plaintiffs purchased. Mr. Kreps purchased an ineligible security, Lehman Brothers Bank 3.8% CD issued in December 2004, before the Settlement Class Period. Kreps Obj. at 1. Similarly, Mr. Taussig purchased Lehman Brothers Series G 7% Notes Due 11/01/14 in January 2007, several months before the start of the Settlement Class Period. The other security that Mr. Taussig purchased, in March 2008, Lehman Brothers 10.25% Notes Due 3/3/23, is not a covered security and was not included in the Third Amended Complaint.

By way of background, Mr. Taussig filed an individual action against Richard Fuld, which recently settled. *See Taussig v. Fuld*, 09 Civ. 3480 (LAK) (S.D.N.Y.). Mr. Taussig states that "he believed [the notes] were covered by the Class Action and relied to his detriment upon Class Counsel and the GCG's representation through notices transmitted and published through the [Settlement] website," and that "interests of note holders were being addressed as to the misrepresentations transmitted in various required public notices by Ernst & Young (E&Y)." Taussig Obj. at 2. Mr. Taussig's securities, however, were not included in the Third Amended Complaint, were not listed as eligible securities in the Notice disseminated in connection with the Settlement (or the notices previously issued in connection with the D&O or UW Settlements) and were not included on the list of eligible securities set forth on the Settlement website. While

Mr. Taussig may have received a copy of the Notice (with claim and control numbers), the notice program reaches persons or entities who are *potentially* class members. Taussig Obj. at 3. Such communication does not alter the definition of the Settlement Class and does not determine his membership in the Settlement Class.

Mr. Kreps and Mr. Taussig essentially request that the Court rewrite the terms of the settlement agreement reached by Plaintiffs and EY by changing the definition of the covered securities and the scope of the Settlement Class.[7] Courts regularly reject objections that attempt to change the definition of the settlement class from that which was litigated, negotiated and agreed to by the parties. As mentioned above, this Court rejected similar arguments raised in connection with the D&O Settlement.[8]

## IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Mr. Andrews and Mr. Gao object to the Plan of Allocation. Putting aside for now that Mr. Gao again failed to establish his standing as a Settlement Class Member, his contentions are groundless.[9] Mr. Gao asserts that "vital information," such as "the so-called 'inflation' & 'deflation' of stock prices and options" and the "driving factors for those calculations," is missing from the Notice. In truth, the terms "inflation" and "deflation" are defined in Section B of the Plan of Allocation entitled "Definitions" (pp. 17-18 of the Plan of Allocation, appended as

---

[7] *See* Stipulation, ¶1(nn) and 2 (ECF No. 535-1). The proposed Settlement Class is substantially similar to the D&O settlement class previously certified by the Court and covers the same Lehman securities.

[8] *See* ECF Nos. 472, 473; *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, MDL No. 1005, M-21-67 (MP), 1995 WL 798907, at *17 (S.D.N.Y. Nov. 20, 1995) (refusing to change class definition from the definition that was litigated and negotiated as part of the settlement).

[9] Mr. Gao failed to provide the required documentation establishing his membership in the Settlement Class and, thus, his standing to object to the Settlement. ECF No. 545. For this reason alone, Mr. Gao's objection should be rejected. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (excluding objections "from individuals who did not provide the required evidence of class membership or who provided evidence indicating they were not class members").

Appendix D to the Notice). Exhibit 1 to the Plan of Allocation lists the 'estimated daily inflation' in Lehman common stock (p. 22) and Exhibit 4 to the Plan of Allocation shows both estimated inflation and deflation (represented by negative numbers) in exchange-traded call and put options traded during the Settlement Class Period (pp. 26-35). The driving factors behind the numbers are Plaintiffs' expert's calculations of the amount of inflation in each security's price on each day of the Settlement Class Period.

The Plan of Allocation provides a detailed description of the method for calculating claims and ultimately allocating the net settlement proceeds to eligible Settlement Class Members. The proposed Plan of Allocation – which is largely based on the plan developed and approved in connection with the D&O Settlement, and in consultation with Plaintiffs' damages consulting expert – again provides a fair and reasonable method to equitably distribute the net settlement proceeds among eligible Settlement Class Members.

Mr. Andrews again objects to the minimum payment threshold. Andrews Obj. at 26. A minimum payment threshold is a common and beneficial feature of allocation plans which benefits the class as a whole by eliminating payments to claimants for whom the cost of processing claims, printing and mailing checks and related follow up would be disproportionate in relation to the size of their claim.[10] Lead Counsel propose a minimum payment threshold of $10.00. The Court approved the $10.00 minimum for the D&O and UW Settlements, given the

---

[10] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 4526593, at *12 (S.D.N.Y Dec. 20, 2007) (approving $50 minimum distribution amount and noting that "courts have approved minimum payouts in class action settlements in order to foster the efficient administration of the settlement."); *Global Crossing,* 225 F.R.D. at 463 ("Class counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their de minimis amounts of relief."). Mr. Andrews' related objection, arguing that the net settlement fund should be divided "evenly among the 916,000 class members" (Andrews Obj. at 26) is overly simplistic and inconsistent with federal securities law class action recoveries.

administrative costs involved and to prevent depletion of the settlement funds to pay *de minimis* claims.[11]

Mr. Andrews also again objects to the provision of the Plan of Allocation that permits distribution of remaining funds to charity once re-distribution is no longer cost-effective. Andrews Obj. at 27.  That portion of the Plan – that requires Lead Counsel to seek an order approving of the contribution to one or more non-sectarian, not-for-profit, 501(c)(3) organizations and to identify three proposed recipients to be selected by certain bar association leaders – tracks the process that the Court suggested for the SNP Settlement and is not objectionable.

## V. THE REQUESTED FEE IS FAIR AND REASONABLE

Lead Counsel's opening papers demonstrate that the requested fee is fair, reasonable and supported by the *Goldberger* factors.  Mr. Andrews and Mr. Gao again object generally to the amount of the requested fee.  Andrews Obj. at 30; Gao Obj. at 1.

Mr. Gao objects in conclusory fashion.[12]  At the time Mr. Gao submitted his objection, Lead Counsel had not yet filed their opening papers in support of their request for attorneys' fees and expenses.  As set forth in Lead Counsel's opening papers, Plaintiffs' Counsel, in obtaining the $99 million recovery from EY, devoted nearly 117,000 hours to services for the benefit of the Settlement Class, resulting in an aggregate lodestar of over $47 million.  Thus, Lead Counsel's

---

[11] ECF Nos. 494 (pp. 8-9 n.9) and 503 (p. 3).  As with the D&O and UW Settlements, when Plaintiffs later move for approval to distribute the net settlement funds, Plaintiffs may recommend distribution below the currently proposed threshold, and the Court, in its discretion, may authorize such distribution.

[12] *See In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 n.3 (S.D.N.Y. 2012) (overruling objection that proposed attorneys' fees are "excessive" for being "conclusory and bereft of factual or legal support"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *22 (S.D.N.Y. Dec. 23, 2009) (rejecting broad, unsupported objections because "[they] are little aid to the Court").

fee request is significantly less than Plaintiffs' Counsel's total lodestar, representing a negative multiplier.

Mr. Andrews' objection to the fee request is likewise without merit. He merely reiterates his characterization that "all the work has already been done for our counsel," and "all they needed was the [Examiner's] Report itself!" Andrews Obj. at 30. As explained above, and in Lead Counsel's opening papers, the Examiner undertook the examination for a totally different purpose; the Examiner's Report did not address critical issues in this case, such as EY's scienter or loss causation; EY consistently challenged the accuracy and completeness of the Examiner's Report; and the Examiner's Report does not constitute a binding determination or the record in this case. While Lead Counsel appropriately used the Examiner's Report and supporting documents as a source of information when drafting the initial allegations against EY, Lead Counsel separately developed the case for over three and one-half years, and the parties were able to reach resolution only after EY recognized its risk of continued litigation.

## VI.   CONCLUSION

For the foregoing reasons and those set forth in the opening papers, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation, and Lead Counsel's Fee and Expense Application. The following proposed orders are submitted for the Court's convenience: (i) the agreed-upon form of proposed Judgment, with Exhibit 1; (ii) a proposed order approving the Plan of Allocation; and (iii) a proposed order awarding attorneys' fees and expenses.

Dated: April 9, 2014                    BERNSTEIN LITOWITZ BERGER
                                        & GROSSMANN LLP

                                            */s/ David R. Stickney*
                                        DAVID R. STICKNEY

                                        MAX W. BERGER

1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:     (212) 554-1400
Facsimile:      (212) 554-1444
         -and-
DAVID R. STICKNEY
NIKI L. MENDOZA
BRETT M. MIDDLETON
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:     (858) 793-0070
Facsimile:      (858) 793-0323


KESSLER TOPAZ MELTZER
   & CHECK, LLP

     */s/ David Kessler*
         DAVID KESSLER

DAVID KESSLER
GREGORY M. CASTALDO
KIMBERLY JUSTICE
JENNIFER L. ENCK
280 King of Prussia Road
Radnor, PA 19087
Telephone:     (610) 667-7707
Facsimile:      (610) 667-7056

*Co-Lead Counsel for Plaintiffs
and the Settlement Class*

11